[Steele v. Sullivan.]

# Steele *v.* Sullivan.

*Bill in Equity for Injunction against Obstruction of Alley in Incorporated City.*

| | |
|---|---|
| 70 | 589 |
| 95 | 642 |
| 70 | 589 |
| 109 | 69 |
| 70 | 589 |
| 111 | 148 |
| 70 | 589 |
| 120 | 204 |
| 122 | 184 |
| 122 | 185 |
| 70 | 589 |
| 128 | 208 |
| 70 | 589 |
| 129 | 175 |
| 129 | 478 |
| 70 | 589 |
| d136 | 648 |
| 70 | 589 |
| 143 | 298 |

1.  *Dedication of highway to public use; how made, or proved.*—A dedication of land to public use as a highway is not required to be in writing, but may be made by any act, or declaration of the owner, manifesting an intention to devote the property to such public use, and it is not complete until accepted by the public; but, while the act of dedication, especially if single, must be clear and unequivocal, acceptance may be shown by long public use, or by acts of corporate or other public officers, recognizing and adopting the highway as such.

2.  *Dedication of private way, or street or alley in city or town.*—A private right of way can not be created by dedication, but a street or alley in an incorporated city or town may be so established, when accepted by the mayor and aldermen, or other corporate authorities; and such acceptance may be manifested, among other methods, by long and uninterrupted use by the public without objection, by the expenditure of corporate money or labor in repairs, and by the recognition of the street or alley in official maps prepared under the authority or direction of the corporate authorities.

3.  *Presumption of dedication from mere user.*—The dedication of a highway, or of a street or alley in an incorporated city or town, will not be presumed from mere user, unaccompanied by some clear and unequivocal act showing the owner's intention, for any period short of twenty years; and a user for twenty years even will not raise such prescription, when it appears that the right was always contested.

4.  *Recitals in deeds, as affecting dedication.*—When streets or alleys are laid out by the owner of land, and lots sold with reference to them, and purchases made on the faith of the act, a dedication may be inferred, though the intention of the owner is always open to explanation; but the mere fact that, in conveying an adjoining lot or tract of land, he describes it as being bounded by a road on one side, does not prove a dedication of the road to the public; and recitals in recorded deeds conveying lands or lots adjacent to a street or alley, which repel the idea of a dedication, tend strongly to rebut the presumption arising from mere user.

5.  *Presumption of right of way, or private easement, from user.*—When a private person claims a right of way, or other easement, on the principle of prescription, he must show that the user and enjoyment was adverse to the owner of the estate, under a claim of right, exclusive, continuous, uninterrupted, and with the knowledge, actual or presumed, of such owner; since a user which is merely permissive, tolerated by the owner, or held under an implied license from him, is revocable at pleasure, and will never ripen into a title by prescription.

APPEAL from the Chancery Court of Madison.

Heard before the Hon. H. C. SPEAKE.

The bill in this case was filed on the 3d February, 1873, by James W. Steele, against Larkin P. Sullivan and others; and

sought to restrain and prevent the obstruction of an alley, which adjoined Sullivan's lot on the west, and in which he had erected a stairway, or flight of steps, leading from the public sidewalk of the street into the second story of his building. The lots of the parties were situated on the same square in the city of Huntsville, lying north of the court-house square, bounded on the north by Clinton street, and east by Washington street; the alley-way running through the middle of the square from north to south, and dividing lots numbered twenty (20) and twenty-eight (28) on the east, from lots numbered nineteen (19) and twenty-seven (27) on the west, as the lots were numbered when the city was laid out. Sullivan's premises were a part of lot numbered twenty-eight (28), fronted the court-house square, and were bounded on the west by the alley, which separated it from a lot and building owned by James I. Donegan, who was made a defendant to the bill. The complainant's premises were part of lot numbered twenty (20), fronted Washington street on the east, and extended to the alley in the rear; and the alley, if kept open, gave access to his premises in the rear, from the street on the north or south. The complainant's premises did not adjoin Sullivan's in the rear, but were separated from them by lots owned by James Conway and Alfred A. Baker, being parts of said lot twenty (20), which also fronted on Washington street, and extended to the alley in the rear; and said Baker and Conway were made defendants to the bill. A map of the city of Huntsville, alleged to have been "surveyed and published in 1861, by Messrs. Hartley & Drayton, under and by authority of the corporate authorities of said city," was made an exhibit to the bill, showing the situation of the several lots and of the alley; the width of the latter being marked fourteen feet, from Clinton street to Sullivan's line, and ten feet along his premises to the street on the south.

The complainant acquired a part of his premises by purchase from George T. Small as the administrator of the estate of V. Small, deceased, and the other portion by a purchase from said George T. Small individually; and his deeds were made exhibits to the bill. The said administrator's deed was dated January 8th, 1867, and described the premises conveyed as follows: "That certain lot of land, lying and being in the city of Huntsville, lying on Washington street, commencing twenty-eight (28) feet from the market-house lot; thence along said street, twenty-two (22) feet, four and a half inches, to a lot belonging to the estate of V. Small, deceased; thence, at right angles with said lot, one hundred and thirty-five (135) feet, *to an alley* between said Small lot and Donegan; thence, *along said alley*, twenty-two (22) feet, four and a half inches, to within twenty-eight (28) feet of the market-house lot, and thence

[Steele v. Sullivan.]

east to the place of beginning." The deed from Small individually, conveying the adjoining lot, was dated February 13th, 1868, and contained a similar reference to the alley in describing the premises conveyed. The complainant alleged in his bill, " that for twenty years past, and upwards, until the obstruction thereof hereinafter mentioned, there has been, and still of right should be, a common use of said alley by all persons, to pass and re-pass, ride and labor, go and return, on foot and on horseback, with their cattle and vehicles, at their free will and pleasure; that for twenty years last past, and upwards, he and those under whom he derived title to his said premises have been in the actual and undisturbed possession of the free and unobstructed use and enjoyment of the said alley, as an alley, until the obstruction thereof by the said Sullivan, as hereinafter mentioned; that for twenty years past, and upwards, until the said obstruction thereof, the said alley has been used exclusively as an alley; that the purchase of said lot by this complainant was made with direct reference to the uses and benefits to be derived from said alley as an alley; that in the purchase of said property by him, and by those from whom he derives his title, direct reference was had to the uses and benefits to be derived from the free and full enjoyment of said alley as such; and in the purchases made by those from whom the defendants derive title to the property held by them, and bounded by said alley, the same reference was had to the uses and benefits to be derived from the free and full enjoyment of said alley as such.".

Sullivan purchased his lot on the 6th August, 1870; and the bill alleged that soon thereafter, with the, intention of erecting a building on his lot, he commenced excavations which encroached on the alley, but desisted in consequence of protests made by complainant, Donegan, and the owners of other lots adjoining the alley; that in June, 1871, " for the purpose of settling said dispute, and establishing the rights of the respective parties—namely, Donegan, Sullivan, Baker, Conway, and this complainant—in and to said alley, and also to establish the western boundary of said Sullivan's lot, a parol agreement was entered into by and between said parties to submit the same to H. N. Moore as arbitrator; that said Moore, by his award, declared the western boundary of said Sullivan's lot to be where the foundation wall of his store-house now stands, and that said alley should remain free and unobstructed for the use and benefits to be derived from its enjoyment as an alley; that said agreement and award were ratified and executed by the parties thereto, and by said Sullivan erecting the western wall of his store-house where said award declared the boundary of his lot to be;" that the alley then remained unobstructed, open to the use of all parties, until Sullivan erected a flight of steps, about

four feet wide, running up from the ground to the second story of his building, thereby obstructing about one-half of the alley, causing irreparable damage to the complainant's property, and preventing his use of the alley as it had been and of right ought to be.

Sullivan answered the bill, denying the complainant's asserted rights in the alley; denying also that the alley was public, and alleging, on the contrary, "that said alley from the beginning has been, and is yet only a private alley, in which no one has, or ever had any interest, except the owners of the said lot now owned by this respondent, and the owners of the said lot now owned by Donegan." He annexed to his answer, as exhibits, copies of recorded deeds in the chain of title to his lot and Donegan's, which showed these facts: On 3d October, 1815, Leroy Pope conveyed to John Brown one-third of lot No. 28, "commencing at the southwest corner of lot No. 27." On October 20th, 1815, Brown sold and conveyed said lot, or twenty feet front thereof, to S. Jennings; said deed reciting, "that an alley of ten feet in width, between said lot and a lot now owned by J. O. Crump, is to be kept open for the joint use of said Jennings and said Crump." Said lot was conveyed by Jennings, by deed dated December 1st, 1815, to S. Donaho, who, by deed dated July, 1817, conveyed to Robert Clark; each of said deeds containing a similar provision as to the alley being kept open for the joint use of the owners of the two lots. In January, 1819, under execution against Clark, the lot was sold by the sheriff of Madison county, David Moore becoming the purchaser at the sale; the sheriff's deed purporting to convey all Clark's interest in the lot, "together with the use and interest of the alley ten feet wide, between said lot and a lot now owned by M. Byrd." On the death of said David Moore, and the division of his estate among his children, the said lot became the property of David L. Moore, who sold and conveyed it, by deed dated August 6th, 1870, to said Sullivan; the deed purporting to convey the lot, which was described as being bounded "on the west by an open space, or alley, between said lot and a lot now owned by James I. Donegan," "with all such right, title and interest, as the party of the first part has, or is entitled to, in the said open space or alley." Donegan's lot was conveyed by Leroy Pope and Jno. J. Winston, on January 22d, 1820, to James Cochran, and was therein described as "running half way across said alley, thence with the middle of said alley," &c.; and the deed also conveyed "the use and right of way on and of the half of said alley." There were similar recitals and clauses in subsequent deeds under which Donegan claimed title.

Sullivan further alleged in his answer, that while David L.

[Steele v. Sullivan.]

Moore was the owner of his lot, a controversy arose between said Moore and Donegan, as to the location of the boundary line between them, and their respective rights in and to the alley; which controversy was submitted by them to the decision of D. P. Lewis and I. Dill as arbitrators. The award of said arbitrators, a copy of which, with the submission, was made an exhibit to Sullivan's answer, located the boundary lines of the two lots where the foundation walls of the buildings were then standing, and as to the alley decided as follows: "We award, that Donegan's rights are limited to the west half of the alley, and he has no right to the east half of the same; while Moore, by the terms of his deeds, is entitled to the use of the alley jointly with Crump and Byrd, which gives him the joint use of the west half with Donegan, Crump and Byrd, and the joint use of the east half with said Crump and Byrd, or whoever has succeeded to their rights." Sullivan denied that he and Donegan had submitted any controversy to the decision of H. N. Moore, and stated that Moore was called in by them to ascertain where his foundation wall stood, as determined by Lewis and Dill; his house having been destroyed, and he preparing to erect another. He denied that complainant, or those to whose estate he succeeded, had any right or interest in the alley, or had used it without interruption for twenty years; alleged that the alley had sometimes been closed up by the persons owning his lot and Donegan's, but had generally been left open for their own convenience; and that while it was thus left open, they permitted other persons to use it, as a matter of grace and favor, without objection.

Decrees *pro confesso* were taken against the other defendants, and they were examined as witnesses for the complainants. The depositions of several old citizens were taken, who testified to the use of the alley by the persons whose lots adjoined it, and also by the public generally, through a long series of years; and some of them also stated that it had sometimes been closed. On all the evidence adduced, the chancellor held, on final hearing on pleadings and proof, that the alley was private, and the complainant had no interest in it. He therefore dismissed the bill, and his decree is now assigned as error.

HUMES & GORDON, for appellant.

D. P. LEWIS, *contra.*   (No briefs on file.)

SOMERVILLE, J.—A dedication of land to the public use, as a highway, need not be in writing, but may originate by any act or declaration of the owner, which manifests an intention to devote the property to such public uses. Being a volun-

38

[Steele v. Sullivan.]

tary donation, it will not be presumed, without the clearest intention to this end. It must be completed by the acceptance of the public, and, when once accepted, is irrevocable. The act of dedication, especially if single, must be clear and unequivocal; but acceptance may be shown by long public use, or by acts of corporate or other public officers, recognizing and adopting the highway as such.—*Cook v. Harris*, 61 N. Y. 448; Washburn on Easements, 186; *Green v. Chelsea*, 24 Pick. 71; *Immigration Association v. Jones*, at the last term.

A dedication can properly be only to the *public use*. A private right of way can not be created by dedication.—*Hall v. McLeod*, 2 Metc. (Ky.) 98. When made of a street or alley in an incorporated town or city, the body of mayor and aldermen, or other corporate authorities, are the proper parties to take charge of the dedicated property; and having indicated acceptance, directly or impliedly, are considered as holding it in *trust* for the public.—3 Sm. Lead. Cas. (5 Amer. Ed.) 222.

Such acceptance by a town or city may be manifested, among other methods, by long and uninterrupted use by the public without objection; by the expenditure of corporate money or labor in repairs, and by the recognition of the street or alley in the official maps of the municipality, prepared under their authority or direction.—2 Wait's Act. & Def. 707; *Page v. Weathersfield*, 13 Vt. 429; *Reese v. Chicago*, 38 Ill. 322.

It is, however, settled law in this State, that a presumption of dedication will not arise from mere user, unaccompanied by some clear and unequivocal act evincing the owner's intention, for any period short of twenty years.—*Hoole v. Attorney General*, 22 Ala. 190; *Immigration Association v. Jones, supra;* *Rosser v. Bunn*, at last term.

And as the intention to dedicate may be inferred from acts or declarations of the owner, as well as from long and uninterrupted acquiescence in user; so it may, in like manner, be disproved, by any word of protest, or act of remonstrance, on the part of the owner, by which he denies or forbids the right of use to the public.—*Nichols v. Aylor*, 7 Leigh (Va.), 565. It has been held, on this principle, that a user of twenty years will not raise a prescription, where it appears that the right had always been a subject of contention.—*Smith v. Miller*, 11 Gray, 148; *Livett v. Wilson*, 3 Bing. 115. Where the recorded deeds of the lands or lots, adjacent to a street or alley, contain recitals or words of conveyance which repel the idea of a dedication, this is always a very strong fact to rebut the presumption arising from the use by the public.—*Bowers v. Manuf. Co.*, 4 Cush. 332. So, the erection of a gate, or other obstruction, across the entrance, rebuts the intention to dedicate an alley as a pub-

lic highway.—Washburn on Easements, 187; *Scott v. State*, 1 Sneed (Tenn.), 633.

The mere fact that the owner of the fee, in conveying an adjoining tract of land by deed, describes it as being bounded by a road on one side, is not, alone, evidence of a public dedication of the road.—*Hoole v. Attorney General*, 22 Ala. 190; *Immigration Association v. Jones, supra*. Of course, where streets or alleys are laid out, and lots are sold by the owner of the soil, with reference to the plan, and purchases made on the faith of the act, a dedication may be inferred, though, in all cases, the intention of the owner is open to explanation.—Washburn on Easements, 138; *Logansport v. Dunn*, 8 Ind. 378; *Child v. Chappell*, 9 N. Y. (5 Seld.) 246; *Hall v. McLeod*, 2 Metc. 98.

Where a right of way, or other easement, is claimed by private persons, upon the principle of prescription, the user and enjoyment, as is universally held, must have been "*adverse* to the owner of the estate from which the easement is claimed, under a *claim of right, exclusive, continuous*, and *uninterrupted*," and with the actual or presumed knowledge of such owner.—2 Wait's Act. & Def. pp. 685, 693; *Colvin v. Burnett*, 17 Wend. (N. Y.) 564; *Tracy v. Atherton*, 36 Vt. 514.

If the user is merely permissive, as existing by the toleration of the owner, and in subordination to or recognition of an implied *license* from him, the right will not mature into a title by prescription, but is revocable at pleasure.—*Bachelder v. Wakefield*, 8 Cush. 243; *Watkins v. Peck*, 13 N. H. 360; *Polly v. McCull*, 37 Ala. 29.

The application of these principles proves fatal to the complainant's claim in this case. We fully concur in the opinion of the chancellor, that the evidence shows that the alley in controversy, described as lying between the store-houses of the appellee, Sullivan, and James I. Donegan, in the city of Huntsville, was never dedicated to the public use, but that it is the private property of the adjacent proprietors. And it is still clearer from the evidence, that the complainant, Steele, shows no right in himself, or those under whom he holds title, except a permissive right of way, in the nature of a mere license. The muniments of title held by Sullivan and Donegan, running back for over sixty years, rebut the idea of dedication, by repeated and continuous claims of private ownership in their vendors, and those under whom they claim. The same inference is corroborated by the contention between these adjacent proprietors, which was submitted to arbitration, and settled by an award declaring the respective rights of the parties.

The alleged claim on the part of the city of Huntsville is entirely unsustained by the testimony, and appears to have been abandoned by the corporate authorities on investigation.

[Dunham v. Milhous.]

The decree of the chancellor dismissing the bill is in full harmony with the above principles which we have discussed, and, being supported by the evidence, is affirmed.