|111　523|
|137　528|

# Avondale Land Co. v. Avondale.

*Bill in Equity to have Land declared a Public Park, and to enjoin Interference therewith.*

1. *Public park; what acts constitute dedication* —A land company, owning many acres of land, for the purpose of establishing a town had such land surveyed and laid off into alleys, streets, avenues and lots, with the exception of a certain tract; and had a map made showing the lines of the survey, the alleys, streets, lots, &c., into which the land, with the exception of this tract, was divided, and this particular tract was designated on the map as a park. The land company, through its authorized agents, sold many lots with reference to the map according to the lines thereon shown. In fixing the price of such lots, their location near the park was considered, and as inducing purchases special attention was called to the reservation of the tract as a public park, and many persons receiving these assurances purchased lots as marked on the map. The land company laid off a large part of the reservation into walks and drives, planted flowers and shrubbery, and otherwise improved and beautified it suitably for park purposes; and refused to pay taxes on it upon the ground that it was a public park *Held:* such facts import an irrevocable dedication of the particular tract so reserved to the public for the purposes and uses of a public park.

APPEAL from the City Court of Birmingham, in Equity. Heard before the Hon. H. A. SHARPE.

The bill in this case was filed by the town of Avondale, a municipal corporation, against the appellants, the Avondale Land Co. and J. J. Calmont; and prayed to have a certain tract of land described in the bill adjudged and declared to be a public park, and that the defendants be enjoined from converting said park from a public to a private use, and from interfering with the public in the use thereof. The facts of the case are sufficiently stated in the opinion.

Upon the submission of the cause, on the pleadings and proof, the chancellor granted the relief prayed for. The respondents appeal from this decree, and assign the rendition thereof as error.

ARNOLD & EVANS and R. H. PEARSON, for appellant.

[Avondale Land Co. v. Avondale.]

1. The court erred in overruling the motion to dismiss for want of equity and in not sustaining said motion. Appellants being in exclusive possession and control of the land and claiming adversely, and there being no allegation or proof of irreparable injury or multiplicity of suits pending, appellee had a complete and adequate remedy of law and it was error for equity to interpose or assume jurisdiction and render a final decree in favor of appellee.—*Irvin v. Dixon*, 9 How. U. S. 10, 29–50; *Carpenter v. R. R. Co.*, 24 N. Y. 655; *Wagner v. R. R. Co.* 25 *Ib.* 526, 534; *Perrin v. R. R. Co.*, 36 *Ib.* 120, 127; *R. R. Co. v. R. R. Co.*, 86 *Ib.* 107, 121-127; 2 Dill. Mun. Corp., § 662; Washb. on Easements, p. 747; 6 A. & E. Ency. of Law, 692–3; 16 *Ib.* 941; 3 Pom. Eq. Jur. §§ 1346, 1351; *Youngblood v. Youngblood*, 54 Ala. 486; *Railway Co. v. McKenzie*, 85 *Ib.* 546.

2. The dedication of land for a public park or square is established in the same manner as in the case of highways and streets.—2 Dill. Mun. Corp. (4 ed.) § 444; 17 A. & E. Ency. of Law, 407–8; 5 *Ib.* 416; *State v. Trask*, 27 Am. Dec. 561. The dedication of land to public use being a voluntary act, donation will not be presumed. *Nemo presumitur donare.* The burden of proof is on the party who alleges dedication, and if the proof is doubtful or ambiguous, it will be construed against him.—5 A. & E. Ency. of Law, 400, 401; 17 *Ib.* 407; *State v. Trask*, 27 Am. Dec. 562; *Lewis v. Portland*, 42 Am. St. R. 772, 778; *Peoria v. Johnston*, 56 Ill. 45, 50; *Steele v. Sullivan*, 70 Ala. 589, 594.

3. The *animus dedicandi* on the part of the land owner, clearly indicated by unequivocable acts or conduct, is absolutely essential to constitute dedication of land to public use and courts will not establish a dedication of land to public use and deprive the owner of his property, unless such intention unequivocally appears by clear and satisfactory proof—2 Dill. Mun. Corp. (4 ed.), § 636 and notes; Washb. on Easements (4 ed.) p. 209; 2 Waits Act. & Defenses 708; *State v. Trask*, 27 Amer. Dec. 554, 562; *Lewis v. Portland*, 41 Am. St. R. 772; *Gage & Co. v. R. R. Co.*, 84 Ala. 224. Proof of the acceptance of the land by the municipal authorities of Avondale was necessary to complete the dedication and to entitle appellee to recover.—*Gage & Co. v. R. R. Co.*,

[Avondale Land Co. v. Avondale.]

84 Ala. 224; *Steele v. Sullivan,* 70 *Ib.* 589; *Reed v. Mayor,*
92 *Ib.* 339, 346; *State v. Trask,*27 Am. Dec. 5 64,566.

4.   The enjoyment of the use of the land with the con-
sent of the owner or consistently with the rights and in-
terests of the owner, has no tendency to prove dedication
or establish adverse rights.   A license by a business man
to enter his premises, extended to the public to attract
custom and as auxillary to the promotion of his business
cannot be construed to be a dedication, however long
considered.—*Gage & Co. v. R. R. Co.,* 84 Ala. 224, 226;
*Smith v. Inge,* 80 *Ib.* 283, 287; 5 A. & E. Ency. of Law,
409; Washb. on Easements, 237–8.   The maintenance
by the land owner of gates, fences or other obstructions
or restriction to the public use of the land, is strong evi-
dence to rebut and disprove the intent to dedicate.

5.   The mere surveying or laying off of lands into
lots, squares and streets and making a map thereof does
not amount to dedication.   There must be a sale with
reference to the survey or map.—*Reed v. Mayor,* 92 Ala.
339, 346; 5 A. & E. Ency. of Law, 405; 2 Dill. Mun. Corp.
§ 640.   The intention to dedicate may be shown by a map
or plat made or used by the owner in selling lots marked
thereon, as well as by words or deeds; but if the map or
the proof of its existence or use by the owner is uncer-
tain or doubtful, then the same principles apply.

Unless a map or plat relied on to prove the dedication
of land for a public square or public grounds, has the
words "Public Square" or "Public Grounds" or, their
equivalent, plainly marked thereon, it is not sufficient
to show the intent to dedicate and parol evidence is ad-
missible to show the intention of the owner.—2 Dill.
Mun. Corp., § 636, note on p. 753, § 648 and note;
17 A. & E Ency. of Law, 407–9; 5 *Ib.* 406; *City of Pella
v. Scholte,* 95 Am. Dec. 729; *Scott v. Des Moines,* 64 Iowa
444; *Heirs of David v. City,* 79 Am. Dec. 586, 590 and
note.

W. C. WARD, *contra.*—When the owner of land maps,
plats and surveys it into lots, blocks and streets with a
view to establishing a town, as in this case, and sells
lots with reference to t e map, designating the parcels
sold with reference to the survey, there is an irrevocable
dedication of the streets to the public, whether the town
at the time was incorporated or not.—*Harn v. Common*

*Council,* 100 Ala. 199, 14 So. Rep. 9 ; *Webb v. Demopolis,* 95 Ala. 116 ; *Reed v. City of Birmingham,* 92 Ala. 339.

2. "The word 'Park' written upon a block of land designated upon a map is as significant of a dedication and of the use to which the land is dedicated as is the word 'street' written upon such map."—*Archer v. Salinas City,* 93 Cal. 56 ; *Trustees of Watertown v. Cowen,* 4 Paige 573, 27 Am. Dec. 80, and note on page 84 ; *Rowan v. Portland,* 8 B. Monroe 246 ; *San Le Andro v. LeBreton,* 72 Cal. 170 ; Dillon on Mun. Corp., §§ 640, 644 ; *Cincinnati v. White,* 6 Peter 431, 22 Am. Dec. 622.

"And if there be public squares or plazas represented on the map, the same rule applies to them and a dedication thereof may be established in the same manner." *San LeAndro v. LeBreton, supra,* and authorities cited ; Dillon on Mun. Corp., (4th ed.), § 644, note 2, and authorities cited in the note, § 645.

3. By its conduct and declarations, the Avondale Land Company is clearly estopped from depriving the public of the use of this park and converting it from a public to its own individual use. Granted that the name "Avondale Park" was never written on its office map, then as alleged and proven, this land was dedicated to public uses. The Land Company by its declarations, and the manner of holding it out, dedicated this park to public uses, and is estopped to deny it.—*Forney v. Calhoun County,* 84 Ala. 215, and authorities cited there ; 5 Am. & Eng. Enc. of Law, p. 402 ; *Morgan v. Railroad Company,* 96 U. S. 716.

McCLELLAN, J.—The question in this case is whether the Avondale Land Co., which originally owned the site of the present town of Avondale, dedicated a certain lot, parcel or tract of land situated on said site to the public as a park ; and this question is purely one of fact, there being really no disagreement of counsel as to the law applicable to it. The case was fully argued at the bar, and the evidence has since received careful consideration by the court, a consideration which has only served to deepen the impression made upon us at the argument into the conviction now to be announced, that the land in controversy was efficaciously dedicated by the Land Company to the inhabitants of the town of Avondale and the public generally as and for the uses

and purposes of a public park. No extended discussion
of the facts is deemed necessary or will be entered upon.
We find the evidence overwhelming to the establish-
ment of the following facts : 1. That the Avondale
Land Co. purchased five or six hundred acres of land
previously utilized only for the purposes of agriculture
and husbandry, with a view to having it laid off into
streets, avenues, alleys, parks and lots and sell-
ing the lots and building up of a town on the land; that
accordingly a survey of the tract was made and thereby
the lines of alleys, streets, avenues and lots were estab-
lished all over the site, except certain forty acres, which
was of a character especially adapted to the purposes of
a park, and a great part of which was ill adapted for
any other uses, that the lines of the streets next to this
parcel as elsewhere on the tract were thus fixed and
established, and that the whole tract was then platted
by the company and a map was made showing all the
lines of the survey, all the alleys, streets, avenues, blocks
and lots into which the tract, except this forty acres,
was divided for the purposes of sale and the use of the
public when the town should spring up, and showing
also this forty acre parcel thereon bounded by streets,
but with no divisional lines upon it, no indication that
any part of it was to be appropriated to alleys, streets,
avenues, blocks or building lots ; but, instead and to the
contrary, across this parcel on the map was written or
printed as a part of the map the words "Avondale Park."
2. That having made this survey and prepared this
map, the Land Company proceeded to offer for sale all
the lots and blocks shown on the map, and did sell great
numbers of lots for building purposes, and in fixing the
prices at which lots were to be and were sold the exist-
ence of this forty acre parcel as a park was taken into
account, and lots on streets surrounding it were held
and sold at higher prices, for the reason, given by the
company at the time, that they were more desirable be-
cause they overlooked the park, though, with this con-
sideration eliminated, they were no more desirable than
lots in other localities on the survey. 3. That all these
sales were made by the authorized agents of the Land
Company from and by reference to this map showing
the reservation of this parcel as a public park, and that
officers and agents of the company, acting in the line

and scope of their duty and authority to make sales of
the lots shown by said map, frequently, by way of in-
ducing purchases of said lots, specially called attention
to this reservation shown by the map, and marked
thereon "Avondale Park," and assured persons to whom
they were endeavoring to make sales that that land was
reserved from sale and set apart and would be main-
tained as a park for the use of the people of the town
and the general public; and many of the persons receiv-
ing these assurances purchased lots as marked on the
map.   4.   That the Land Company laid off a large part
of this reservation into walks and drives, planted flowers
and shrubbery in it, built a pavilion near a large spring
therein, curbed up the spring, and otherwise beautified
and improved the premises suitably to their use for park
purposes, erected a fence around the tract with gates
for pedestrians and vehicles near the spring, and over
these gates for about two years, during which the greater
number of sales of lots was made, there was a large
sign bearing the words "Avondale Park;" that mean-
time the purchasers of lots overlooking this park and
thoroughout the plat builded houses upon them and
lived there until a town grew up of some two thousand
inhabitants, and was finally in 1888, the sales having
commenced in the latter part of 1884 or in 1885 and
continued, organized and incorporated as a municipality
under the name of Avondale; and that all this time and
down to a short time before bill filed the inhabitants of
the town and the public generally used and enjoyed this
land as a public park without let or hindrance except
that latterly the gates were closed and locked at night,
a practice or regulation not at all unusual in respect of
public parks, and except that a part of the land was
used by the agent of the company in charge of the park
in raising vegetables and flowers, and the agent occu-
pied an old house which was on the premises when they
were purchased by the company; and 5.   That the
company has declined and refused to pay municipal
taxes on the land on the express ground that it was a
public park.

Upon all the authorities these facts (to which others
of like tendency found in the evidence might be added)
or even very much less than these facts, import an irre-
vocable dedication of this land to the public for the pur-

poses and uses of a public park, and this whatever may have been the secret intention of the company or its officers, or its or their views as their ultimate rights in the premises, or the uses to which they have put a part of the land, or the control which they have exercised over it.

It is said in argument that the bill is not maintainable because on the case made by its averments and the facts as they were construed by the city judge, and as we construe them, the complainant had an adequate remedy at law. Our own decisions substantially settle this point in favor of the complainant.—*Demopolis v. Webb*, 87 Ala. 659; *Webb v. Demopolis*, 95 Ala. 116; *Harn v. Common Council*, 100 Ala. 199, 14 So. Rep. 9.

Affirmed.