(118 So. 572)

### TOWN OF LEEDS et al. v. SHARP.
### (6 Div. 962.)

Supreme Court of Alabama.   Oct. 18, 1928.

Rehearing Denied Nov. 22, 1928.

404

Erle Pettus, of Birmingham, and W. L. Acuff, of Leeds, for appellee.

J. K. Brockman and Stokely, Scrivner, Dominick & Smith, all of Birmingham, for appellants.

GARDNER, J. ▇ This bill was filed by appellants against appellee seeking injunctive relief against the diversion of the use of the property therein described as a public park to private purposes. The equity of bills of this character is well recognized. Hill v. Houk, 155 Ala. 448, 46 So. 562.

Complainants insist the property had been dedicated to the public and particularly to the town of Leeds, within the corporate limits of which it is situated. Respondent, on the other hand, claims the property as his own and denies there has been any dedication. The question of dedication vel non was therefore the issue involved, determination of which rested upon conflicting proof, submitted to the chancellor by way of depositions of various witnesses, and resulting in a decree denying relief and dismissing the bill. From this decree complainants prosecute the appeal.

A brief reference to the salient features of the evidence will suffice. The property here involved consists of two and one-half acres

of land which seem to have been generally known as Farley's Park. In 1914, and prior thereto, Dr. A. J. Farley owned this park and adjoining land on the west separated therefrom by Cahaba Creek, a well defined stream. Dr. Farley desired to sell the property situated on the west and across the stream from this park. To that end a promoter was employed, the property surveyed and platted into lots, streets and alleys. A map was made by the surveyor, which was recorded in the probate office. A copy of this map (Exhibit A to the testimony of C. S. Whitmire) reproduced in the report of the case, will be helpful to a more complete understanding of the situation. The map is drawn to scale and dimensions of lots, streets and alleys appear. The property here involved is designated by the word "Park," but no dimensions or boundaries shown. Whether or not the recorded map contains proper certificates and acknowledgment, is not made to appear, and indeed it is not insisted that the recordation of this map sufficed as a statutory dedication. Section 10357, et seq., Code of 1923; Stack v. Tenn. Land Co., 209 Ala. 449, 96 So. 355.

The argument in favor of the relief sought rests upon the contention that there has been a common-law dedication. No controversy arises as to the general rule of law here applicable. To establish such a dedication the "clearest intention" on the part of the owner must be shown, and the burden of proof rests on complainants. "To discharge this burden * * * the evidence must be clear and cogent, and the acts of the owner relied on to establish a dedication must be convincing of an intent to dedicate the property to public use, and such acts must be unequivocal in their indication of the owner's intention to create a public right exclusive of his own." City of Florence v. Florence Land Co., 204 Ala. 175, 85 So. 516. "The existence vel non of the requisite intent is not to be ascertained, however, from the purpose 'hidden in the mind of the land owner,' but is read by the court from acts of the owner." East Birmingham Realty Co. v. Birmingham Mach. Co., 160 Ala. 461, 49 So. 448. "A 'dedication' is a donation or appropriation of property to public use by the owner, accepted by the public. It may be in writing or in parol; may be evidenced by words or acts; by one declaration or unequivocal act, or by a course of conduct evincing a clear purpose to dedicate." Hill v. Houk, 155 Ala. 448, 46 So. 562. * * * "Where an owner causes his lands to be surveyed and platted, whether the plat be recorded or not, and proceeds to sell one or more lots according to the plat, this is a completed dedication of the streets laid out on the plat. The purchase of lots constitutes an acceptance which inures to the public. An element of estoppel enters into this form of dedication. The obligations of good faith arise by thus holding out to the public the use of the proposed streets as an appurtenance to the property offered for sale." Manning et al. v. House, 211 Ala. 570, 100 So. 772.

It is argued that the property here involved was designated "Park" on the map by way of description only, and therefore is not to be treated as indicating a dedicatory purpose or intent. State v. Meaher, 213 Ala. 466, 105 So. 562; Hoole v. Atty. Gen., 22 Ala. 197.

In view of the evidence offered by complainants and presently to be noted, the following excerpt from Manning v. House, supra, is here appropriate: "A map is to be construed, as other writings, according to its natural and reasonable import to those whose interests are affected."

On July 4, 1914, the property of Dr. Farley, adjoining Farley's Park on the west and separated therefrom by Cahaba creek, and which had been surveyed and platted, as previously stated, was offered for sale by an auctioneer on the ground. A barbecue was given and prizes offered to stimulate interest and attract a crowd. Several maps (copies of Exhibit "A" to testimony of C. S. Whitmire) were used and shown to prospective buyers and following the purchase Dr. Farley, the owner, executed deeds to the several lots sold by reference to the map, which was on record. This property was known as a subdivision of Leeds, and designated on the map as "Park Place." It was separated from the park by Cahaba creek and on the edge of the creek in the park was a spring, with water suitable for domestic use. Not only was the "Park" so designated on the map, but the name of the subdivision, "Park Place," indicates the general scheme as laid in conjunction with the park. The evidence discloses that this park had been used by the public for picnics and gatherings of like character and was so continued in use after the sale, and that the topography of the ground, the spring, and all surroundings combined to make it a desirable park site. While there are no boundaries given on the map (for the purpose here in hand this was not essential [City of Florence v. Florence Land Co., supra]), yet the witnesses had no difficulty in designating the area known as the park and as defining its boundaries by Cahaba creek, the Central of Georgia Railway right of way and the Ashville and Montevallo public road.

Complainant's right to relief rests upon the theory of estoppel (Stack v. Tenn. Land Co., 209 Ala. 449, 96 So. 355), and we now reach a consideration of the evidence which, to our minds, is most persuasive in favor of such right. A number of witnesses, citizens of the community, who were present at the public auction sale of July 4th, 1914, and whose characters are not assailed, testify that the auctioneer stated, as an inducement

to prospective purchasers, that the property here involved and designated "Park" on the map, which he exhibited, would forever be a public park and that each purchaser would have the privilege of this park and the spring situated therein. Some of these witnesses, relying upon such statement, purchased lots at this sale; among them was R. S. Bass, a complainant to this cause. Dr. Farley was present on the ground. Witness Witherington testified his recollection there were handbills distributed with such statement on them, though no handbills appear to have been preserved. He further testified, however, that upon the auctioneer making the above statement Dr. Farley "got up and substantiated that a little later in the same wagon with the auctioneer." The testimony of C. S. Whitmire is to like effect, from which we take the following excerpt:

"The auctioneer was up on a wagon and says *that they were fixing to sell those lots to the* highest bidder, and there were no by-bidders, and some of them interested explained the map, and he picked up a map and showed them and says, 'Each man that buys a lot here will have the privilege of this park and spring in this park, as this park will forever be a public park.' He says, 'Am I right about that, Dr. Farley?' and Dr. Farley said, 'Yes;' said each one that bought a lot had the right to the park and spring." ●

A number of witnesses testify to statements of the auctioneer, who do not recall seeing or hearing Dr. Farley, while some recall the auctioneer's statement and testify that Dr. Farley was present at the time and made no denial. J. M. Spruiell, who was mayor of the town of Leeds when his testimony was taken, states that about the time of the sale, and afterwards, he heard Dr. Farley say that this park had been dedicated to the town of Leeds as a park, that it was not only for people who bought property over there, but for Leeds and the people of Leeds. The witness was on the council in 1919, while Witherington was mayor, and respondent M. J. Sharp was also a member of the town council, and testified to the passage of the following resolution which was passed by the council on motion of M. J. Sharp:

"It was moved, seconded, and carried that the town authorities take charge of the park donated by Dr. Farley, that the mayor have notices to all trespassers posted in said park."

Shown the map, Spruiell pointed out the "blocks marked 'park'" on the property Dr. Farley referred to in stating it had been dedicated to the town of Leeds. As previously noted, the deeds executed by Dr. Farley to the purchasers at the sale were made in accordance with the recorded map. That of complainant Bass was offered in evidence and conveys certain lots in "Block C as surveyed and laid off by Worthy Development Company, and known and designated as

Park Addition to town of Leeds, Alabama, and recorded in Map Book ——, Page ——, in office of Judge of Probate, Jefferson County, Alabama.

Complainants' evidence further tends to show the town of Leeds has had supervision over this property after the sale, clearing underbrush, whitewashing the trees; fixing the roads, and that the public have used the park as previously and without objection until 1921 when respondent Sharp interposed objection thereto.

The testimony offered by respondent is, in some respects, not in conflict with complainants' contention. That of the promoter and surveyor, to the effect that the park property was not included in the sale and was never surveyed, is not at all inconsistent with the view of its dedication to the public use. A number of respondent's witnesses testify the auctioneer stated the park property would *not* be sold, but reserved as Dr. Farley's park, and it is generally agreed by all the witnesses, including respondent, that the auctioneer made reference to the spring situated in the park and of its use by the purchasers. It is significant that all the witnesses agree there was some reference to the park and to the use of the spring therein located. Its designation on the map as exhibited to prospective purchasers must be given more significance than merely as a matter of description. The creek itself was a well defined stream and would have served the purpose of a boundary. As said by the court in East Birmingham Realty Co. v. Birmingham Mach. Co., supra, the requisite intent on the part of the owner is to be ascertained, not from the purpose hidden in his mind, but is to be read by the court from his acts, and, as noted in Manning v. House, supra, "a map is to be construed, as other writings, according to its natural and reasonable import to those whose interests are affected."

It very clearly appears respondent had knowledge of the public claim to this property as a park and, indeed, the manner of its purchase by him, as disclosed on pages 103–4 of the transcript, discloses such knowledge.

We have not overlooked the testimony of Dr. Farley, who subsequently sold the property by warranty deed, in denial of the material testimony offered by complainants, but the evidence to the contrary is clear and cogent from witnesses, many of whom appear to be without any interest whatever from a personal standpoint, and whose standing in the community and reputation for integrity and veracity has not been questioned.

Upon consideration of all the facts and circumstances here disclosed, we are persuaded the logical conclusion is unescapable that there has been a common-law dedication of the property described in the bill to the public use, and that complainants are entitled to the relief prayed for in the bill.

The decree will therefore be reversed and one here rendered granting complainants relief.

Reversed and rendered.

ANDERSON, C. J., and BOULDIN and FOSTER, JJ., concur.