53 So.2d 617

### STRINGER REALTY CO., Inc. v. CITY OF GADSDEN et al.
### 7 Div. 55.

Supreme Court of Alabama.
June 28, 1951.

78

Lusk, Swann & Burns, Gadsden, for appellant.

Dortch, Allen & Meighan and H. S. Patterson, Jr., Gadsden, for appellees.

STAKELY, Justice.

Stringer Realty Company, Inc., a corporation, filed a bill to quiet title against the City of Gadsden and Hermine C. Patterson, alleging that she was such a person as would fairly insure adequate representation of all other persons in a class. The bill contained the usual provisions required by the statute in bills of this character. Code of 1940, Tit. 7, § 1110. The bill contained further allegations. Since these additional allegations and the proof offered in support thereof are in accord, it is sufficient to state in substance the facts as shown by the evidence.

Prior to March 9, 1938 certain lands in the City of Gadsden had been platted as shown by a map or plat known as Edenwood Addition. This map or plat was recorded in the office of the Judge of Probate of Etowah County. This map or plat contained Block A, lots 1 to 20, with a por-

tion of the property not divided into lots in the north end, and Block B, lots 1 to 24, with a portion of the property not divided into lots in the south end. Block A was north of Block B so that the two tracts not divided into lots were widely separated. These two tracts comprise the property involved in this suit.

On March 9, 1938 along with other property in Edenwood Addition complainant acquired the property included in Blocks A and B with certain exceptions not here important. The complainant then replatted the property it had obtained into a somewhat differently arranged subdivision, designated as "Stringer Realty Company Resurvey of Edenwood Addition." The two tracts not divided into lots on the first map were left unchanged on the second map, except that on the second map each was designated "Private Park."

The complainant sold the majority of the lots then owned in the subdivision. Many homes were built and the community grew. In none of the deeds executed by the complainant was any reference made to the "Private Park." No deed executed by the plaintiff was pleaded or proved. The two tracts each designated "Private Park" remained unimproved. They were never developed or used as parks. The plaintiff assessed and paid the taxes thereon and no resident or owner in the subdivision ever evidenced any interest therein. The complainant is in peaceable possession of the property and no suit is pending to enforce or test the validity of any title or claim which any of the parties may have to the land involved. There is no evidence that the tracts or either of them were ways of necessity, accessibility, ingress or egress.

It is alleged in the bill that the defendants claim that the describing of those portions of said Blocks A and B as "Private Park" on the map or plat, the filing of the map or plat for record and the selling of lots constituted an effective dedication of the property to the public as a public park or a private reservation or easement common to all owners or residents in the addition and that the complainant has no further interest therein except in common with the public or as an owner of the remaining lots. The complainant prayed: "This court will order and decree there has been no dedication by the plaintiff of the above described parcels of land to public use and neither the public nor the defendant Hermine C. Patterson nor any other owners of lots or residents in said addition have any right, title, interest, or easement in, or encumbrance upon said property and all such claims as the defendants may have to said property as a public park or otherwise be forever quieted in your plaintiff and your plaintiff is vested with a good and indefeasible title in fee simple thereto."

There was no demurrer to the bill. The City of Gadsden answered:

"1. This defendant claims no interest in the lands described in Paragraph 2 of the bill of complaint and referred to in said paragraph as 'Private Park'.

"2. This defendant has never accepted either of said tracts of land as a park and has never exercised any dominion or control whatever over either of them and has no intention of so doing."

The respondent Hermine C. Patterson answered: "The complainant had surveyed and platted the lands as shown by the copy of the map or plat attached to said Bill of Complaint as Exhibit 'A' and made a part thereof, and the entire tract owned and possessed by the complainant was divided in said map or plat into smaller tracts known as lots with the exception of two tracts marked 'Private Park'. It is further averred that the purpose of dividing said lands and platting them was to make said lands attractive to prospective purchasers thereof, at more favorable prices, and this defendant was one of said purchasers * * * The statutes of the State of Alabama provide for the statutory dedication of land for public use and because of the nature and location of the heretofore referred to tracts and the mode, plan and scheme of division by said map or plat, this defendant is informed and believes and upon such information and belief, says that the title, ownership and possession of the two said tracts were intended to be dedicated and actually were

dedicated, in fact and law, to purchasers of said lots in said map or plat, Exhibit 'A', of whom this defendant is one."

Only one witness testified in the case. This witness was T. A. Stringer, President of the Stringer Realty Company, the complainant in the cause. His testimony supported the statutory allegations in the bill and also the allegations of the bill that the areas of the blocks designated on the recorded map as "Private Park" were never intended to be dedicated to public use or for the private use of persons buying property in the platted areas, that at no time since the property was platted had the public or any person owning property in the subdivision exercised any rights in connection with the property and further that the Stringer Realty Company had assessed and paid the taxes on the property designated as "Private Park" along with its other property. At the conclusion of the hearing the court entered a decree denying the relief sought by the bill and dismissing the bill.

It is obvious that the decree denying the complainant relief can only be sustained on one of two theories (1) dedication to public use or (2) the granting of an easement for private use.

█ It cannot be sustained as a dedication to public use. To describe a tract of land as "Private Park" appears to indicate the opposite of public use. There is such a thing as a private park as contrasted with a public park. Golf View Realty Co. v. Sioux City, 222 Iowa 433, 269 N.W. 451; 67 C.J.S. Park, page 859. The acknowledgment and recordation of the map or plat did not operate as a statutory dedication of the lands in question since the map or plat did not show these lands to be "public grounds." § 12 et seq., Title 56, Code of 1940. Nor was there a common law dedication.

In Steele v. Sullivan, 70 Ala. 589, this court said: "A dedication of land to the public use, as a highway, need not be in writing, but may originate by any act or declaration of the owner, which manifests an intention to devote the property to such public use. Being a voluntary donation, it will not be presumed, without the clearest intention to this end. It must be completed by the acceptance of the public, and, when once accepted, is irrevocable. The act of dedication, especially if single, must be clear and unequivocal; but acceptance may be shown by long public use, or by acts of corporate or other public officers, recognizing and adopting the highway as such. * * *."

In 16 Am.Jur. p. 359, § 15, it is said: "There is no such thing as a dedication between the owner and individuals. The public must be a party to every dedication. In fact, the essence of a dedication to public uses is that it shall be for the use of the public at large. There may be a dedication of lands for special uses, but it must be for the benefit of the public, and not for any particular part of it; and if from the nature of the user it must be confined to a few individuals, such as the use of land for piling wood, the idea of dedication is negatived. Thus, if the dedication confers a right of way, such right of way is a highway, not a private passway; and a grant by the owner of a private right of way over his lands to buyers of different parcels of the same to furnish them with convenient access to the street is no dedication to public use."

In Hill v. Wing, 193 Ala. 312, 69 So. 445, 446, this court said: "The case of our own court, nearest in point, which we have examined, is that of Steele v. Sullivan, 70 Ala. 589. In that case it was said that a dedication can properly be made only to the public use; that a private right of way cannot be created by dedication."

In Town of Leeds v. Sharp, 218 Ala. 403, 118 So. 572, 573, where the question of the dedication of a public park was involved, this court said: "The argument in favor of the relief sought rests upon the contention that there has been a common-law dedication. No controversy arises as to the general rule of law here applicable. To establish such a dedication the 'clearest intention' on the part of the owner must be shown, and the burden of proof rests on complainants. 'To discharge this burden * * * the evidence must be clear and cogent, and the acts of the owner relied on

to establish a dedication must be convincing of an intent to dedicate the property to public use, and such acts must be unequivocal in their indication of the owner's intention to create a public right exclusive of his own.' * * *."

To summarize, there was neither a statutory dedication nor a common law dedication of the lands here involved. Fort Payne Co. v. City of Ft. Payne, 216 Ala. 679, 114 So. 63; Smith v. City of Dothan, 211 Ala. 338, 100 So. 501; authorities supra.

■ It seems equally clear that the theory of easement for private use common to all purchasers of lots cannot be sustained. There is a complete absence of any grant, express or implied, or any prescriptive use. There was no deed. In Jacksonville Public Service Corp. v. Calhoun Water Co., 219 Ala. 616, 123 So. 79, 80, 64 A.L.R. 1550, it was said: "'An easement always implies an interest in the land in or over which it is enjoyed.' 'It lies not in livery, but in grant, and a freehold interest in it cannot be created or passed * * * otherwise than by deed.'"

See also Hicks Bros. v. Swift Creek Mill Co., 133 Ala. 411, 31 So. 947, 57 L.R.A. 720, 91 Am.St.Rep. 38.

■ We have considered whether the designation "Private Park" on the two tracts would bring the case within the rules declared by this court in Scheuer v. Britt, 218 Ala. 270, 118 So. 658, 660, where it was said: "Where the owner of a tract of land adopts a general scheme for its improvement, dividing it into lots, and conveying these with uniform restrictions as to the purposes for which the lands may be used, such restrictions create equitable easements in favor of the owners of the several lots, which may be enforced in equity by any one of such owners. Such restrictions are not for the benefit of the grantor only, but for the benefit of all purchasers. The owner of each lot has as appurtenant to his lot a right in the nature of an easement upon the other lots, which he may enforce in equity."

■ But in the case at bar there are no deeds containing covenants with reference to the area or areas in which those designated "Private Park" are situated. There are no deeds containing restrictions of any kind. The rules declared in the foregoing authority are not applicable here. Since there was no express easement or covenant or restriction, this leaves only for consideration whether there could arise an easement by implication. In Birmingham Trust & Savings Co. v. Mason, 222 Ala. 38, 130 So. 559, 561, this court said: "Easements by implied grant of the nature involved in this case are usually limited to such as are open and visible, continuous, and reasonably necessary to the estate granted. Mere convenience is not equivalent to reasonable necessity. The right is an implication at best, and it is a question of fact in each particular case to determine whether the right is reasonably necessary to the enjoyment of the property conveyed."

■ If the word park had been used such a word could undoubtedly have been construed to mean a public park. Such appears to be the conclusion in Avondale Land Co. v. Town of Avondale, 111 Ala. 523, 21 So. 318. But here the lands were specifically designated as "Private Park". Under the evidence in this case we do not see how any other construction can be had than that the property was private property exclusively owned and for the sole use of the owner. In Webster's New International Dictionary the word "private" is defined as follows: "Belonging to, or concerning, an individual person, company or interest; peculiar to oneself; unconnected with others; personal; one's own; not public; not general; separate; as, a man's private opinion; private property; a private purse; private expenses or interests; a private secretary; a private wrong; specif., of an act, bill, etc., relating only to a particular person or class or classes of persons and hence not receiving judicial notice by the court; opposed to public."

Under the facts shown in the case at bar the bill should not have been dismissed and the complainant should have been granted the relief sought.

Reversed and remanded.

LIVINGSTON, C. J., and FOSTER, J., concur.

SIMPSON, J., agrees with the conclusion, based on the evidence adduced.

BROWN and LAWSON, JJ., dissent.

LAWSON, Justice (dissenting).

I cannot agree with the conclusion reached by the majority to the effect that those who purchased lots in accordance with the plat designated "Stringer Realty Company Resurvey of Edenwood Addition" and whose deeds make reference to the plat do not have an easement in such areas described in the plat as "Private Park."

The general rule is stated in 28 C.J.S., Easements, § 44, page 708, as follows: "Where land is sold with reference to a map or plat showing a park, beach, or open square, the purchaser acquires an easement that such area shall be used in the manner designated, and an easement over the streets which afford access to such area."

The majority opinion seems to indicate that if the word "private" had not been used a different question might be presented. The word "private," in my opinion, merely indicates that the park was not to be dedicated to the public but was to be used for the benefit and enjoyment of those who purchased lots in the subdivision. It was an inducement for one to purchase such lots, and the grantors should not now be permitted to repudiate the easement or deny that it exists.

In effect the majority opinion says that the words "private park" as used in the plat showed that those who platted the lands were reserving such area for their own private purpose. The answer to that argument is that if the owners had intended to reserve complete dominion and control over such area they could have done so by the simple device of excluding it from the plat.

In Caffey v. Parris, 186 Ga. 303, 197 S.E. 898, 900, the rule is stated as follows: "Where an owner of land sells a part of it in lots for residential purposes, the sales being made with reference to a plat by which another part of the land is designated as a park, and where the purchasers in buying rely upon the plat, the seller is estopped from asserting a claim adverse to the right of the purchasers, or their assigns, to have the land so designated restricted to use as a park and to share the use of it as such. East Atlanta Land Co. v. Mower, 138 Ga. 380, 75 S.E. 418. * *"

To like effect see Williamson v. Salmon, 105 Misc. 485, 173 N.Y.S. 617.

I am of the opinion that the decree should be affirmed.

BROWN, J., concurs in this dissent.