DONALDSON, Judge.
This appeal involves, among other things, whether an easement was created based on a notation on a subdivision plat and judicial redemption of property sold for unpaid ad valorem taxes. The Dom-browski Living Trust (“the DLT”) appeals from a judgment of thé Baldwin Circuit Court (“the trial court”) in favor of Mor-gantown . Property Owners Association, . Inc. (“MPOA”), denying its request.to judicially redeem property located to Baldwin County that had been sold for unpaid ad valorem taxes. This matter was tried based op stipulated evidence, and .our review is de novo. We affirm the judgment of the *241 trial court, although not for the reasons expressed in the judgment.
Background
The materials submitted by the parties reveal the following pertinent facts. The property in dispute in this case is a 10.63-foot-wide strip of land (“the disputed property”) within the Morgantown subdivision (“the subdivision”), a neighborhood of residential homes on lots located along the coast of the Gulf of Mexico (“the Gulf’) in Gulf Shores. Morgantown, Inc., was the initial developer of the subdivision. It divided the initial development of the subdivision into two phases, Phase I and Phase II. In 1992, as a part of Phase II, Morgan-town, Inc., recorded a plat depicting lots 1 through 14 along the coast of the Gulf. Those lots varied fróm 90 to 100 feet iri width. In April 1993, Morgantown, Inc., conveyed lots 1 through 9 in Phase II to Stewart & Nelson Development Co., Inc. (“SNDC”). Harris Stewart, Jr., testified on behalf of SNDC as an officer of the company. In order to incréase the number of lots that could be sold in Phase II, SNDC resubdivided lots 1 through 9 of Phase II into 75-foot-wide lots. All of those lots had direct beach access to the Gulf. As a part of the resubdivision, the area of land forming the disputed property was created between the lots identified in the resubdivision as lot 6A and lot 7. The plat for the new lots was recorded in the Baldwin Probate Court at slide 1442A. The area of land forming the disputed property was marked on the plat with the following notation without further explanation: “Private Walking Easement.” The evidence shows that the disputed property was separately assessed for ad valorem property taxes.
In October 1993, SNDC conveyed lot 9 of Phase II to an entity unrelated to this litigation. In March 1994, SNDC conveyed lot 8 of Phase II to individuals not related to this litigation. Both deeds referenced the plat of Phase II as recorded at slide 1442A.
In August 1994, SNDC conveyed the disputed property and lots 6A and 7. to Phillip Dombrowski. Before the closing of the sale of the lots, Dombrowski sent correspondence to Stewart requesting that SNDC “vacate” the purported easement located on the disputed property. By letter dated August 11,1994, Stewart stated that SNDC did not object to a vacation of the easement. No further action was taken .in an effort to vacate the purported easement on the disputed property.
. Following the August 1994 conveyance, ad valorem property taxes on the disputed property continued to be assessed against SNDC instead of Dombrowski. The ad va-lorem taxes were not paid, 'and in May 1996 the State- Land Commissioner obtained title to the disputed property. In April 2001,- Stewart.purchased the disputed-property from the.State Land Commissioner at a tax sale. Stewart informed Dombrowski at some point in 2001 of his purchase of the disputed property. The deed Stewart obtained from the State Land Commissioner was not -recorded until November 28, 2007. On May 14, 2009, Stewart conveyed the disputed property to Morgantown Development Co., Inc., a company in which he served as the president. That same day, Morgantown Development Co., Inc., conveyed the disputed property to MPOA.
On January 4, 2000, Dombrowski conveyed lot 6A to a purchaser unrelated to this litigation. In March 2001, Dombrowski conveyed lot 7 and his interest in the disputed property to the DLT. The deed from Dombrowski to the DLT also-purported to include lot 6A, but it is'undisputed that Dombrowski no longer had title to lot 6A at the time of the transfer of lot 7.
*242 On June 4, 2013, the DLT, of which Dombrowski is a cotrustee with his wife, filed a complaint against MPOA in the trial court, seeking to judicially redeem and quiet title to the disputed property.[1] MPOA filed an answer in which it asserted the affirmative defenses of estoppel and laches, among others, and a counterclaim seeking a judgment declaring the rights of the parties to the disputed property. Both MPOA and the DLT filed motions for a summary judgment. The trial court denied each party’s motion for a summary judgment on April 28, 2015.
The trial court scheduled a trial for July 29, 2015. On July 20, 2015, the trial court entered a scheduling order by agreement of the parties. In that order, the trial was canceled. In lieu of a trial, the parties agreed, among other things, to submit “cross motions for summary judgment with accompanying trial briefs” by a certain date. The parties also agreed to the specific evidentiary materials that would be submitted with the motions. The order, also provided, in part:
“5) Although the Parties do not believe there are any disputed facts, the Court will decide any questions of fact as it determines from the Exhibits and Testimony which shall include any Depositions previously taken by the parties in this case if offered to the Court by either party.
“6) Once all filings have been submitted no later than the end of the day, August 28, the Court will then take the case under submission and ultimately render a Final Judgment in this matter.”
Both MPOA and the DLT submitted materials with supporting documentation, as contemplated by the scheduling order. In its submission, MPOA asserted that the August 1994 deed from SNDC that conveyed lot 6A, lot 7, and the disputed property to Dombrowski was void because, it said, “by filing the plat of the Resubdivision of. Phase II in the Baldwin County Probate Court, with the [disputed property shown thereon, and then selling lots with .reference to said easement prior to the 1994 conveyance to Dombrowski, the developer dedicated and/or vested said lot owners with a right to use the easement for beach access, a right, which could not be sold, destroyed or vacated without such lot owner’s consent.” MPOA further argued that § 35-2-53, Ala. Code 1975, sets forth specific procedures by which a plat may be vacated and that it “required all lot owners who had purchased lots in the Re-subdivision of Phase II to execute and record a written instrument vacating the private disputed property at issue prior to the 1994 conveyance thereof to Dombrow-ski, in order for the 1994 conveyance to be valid.” According .to MPOA, the disputed property was intended to be dedicated for the benefit of all lot owners in the subdivision but not for the benefit of the general public. MPOA asserted that the easement on the disputed property was never vacated and that MPOA was entitled to a judgment as a matter of law. MPOA attached to its submission, among other things, the master plat for the subdivision, slide 1442A, the 1994 deed to Dombrowski, the 1993 and 1994 deeds conveying lots 8 and 9 of Phase II, and deposition testimony.
*243 In the DLT’s submission, it asserted that there had been no proper dédication of the disputed property to the public and that, therefore, there was nothing to be vacated. The DLT also asserted that the disputed property was not part of the designated common areas of the subdivision that had been specifically established in the plats for the benefit of all the property owners in the subdivision. The DLT asserted that MPOA had previously acknowledged that the disputed property was not owned or controlled by MPOA because, it asserted, MPOA had entered into an agreement with Morgantown Development Co., Inc., in 2009 in which MPOA had received title to the disputed property as well as to another purported easement titled in the name of Morgantown Development Co., Inc.
The DLT also argued that it was entitled to judicially redeem the disputed property because, it asserted, since 1994 the disputed property had been “used, occupied, and peaceably possessed by [the DLT] and the Dombrowski family as part of their beach front property on the Gulf of Mexico.” The DLT asserted that evidence of its possession “includes, without limitation, repeatedly enhancing dunes after hurricanes, constructing and installing fencing, moving sand to the [disputed property] when allowed by the Alabama Department of Environmental Management, planting sea oats and planting other prescribed vegetation.” The DLT attached to its submission, among other evidence, various deeds, the master plat for the subdivision, deposition testimony, and affidavits.
On December 9,' 2015, the trial court entered a final judgment in favor of MPOA, finding, in part, that
“the ‘attempted’ conveyance of [the disputed property] from [SNDC] to Dombrowski was invalid. The fact that the sale of Lot 8 and Lot' 9 were previously sold to other purchasers with reference to Slide 1442A voided any ability for. [SNDC] to convey the easement to Dombrowski. Moreover, Mr.-Dombrow-ski expressed interest in vacating the easement, which is evidence that he had knowledge that there could not be a proper conveyance. The. owners of Lots 8 and 9 could have consented to the conveyance of the. easement, but they never did. Additionally, even if the .easement was vacated, Dombrowski never paid ad valorem taxes. Therefore, Dom-browski lost any interest in the easement he may have had.”
On January 19, 2016, the DLT filed its notice of appeal to the supreme court. The supreme court transferred the appeal to this coprt pursuant to § 12-2-7(6), Ala. Code 1975.
Standard of Review
By agreement of the parties, this case was tried based, on stipulated evidence without the presentation of live testimony. The parties agreed that the trial court would decide any disputed facts based only on the written materials submitted and enter a final judgment accordingly. Pursuant to Rule 43(a), Ala. R. Civ. P., “[attorneys for the parties are authorized to effect by agreement the manner of taking testimony absent a showing that the trial [c]ourt limited or prohibited such agreed manner.” Jones v. Gladney, 339 So.2d 1019, 1021 (Ala.1976). “[W]here no testimony is presented ore tenus, a reviewing court will not apply the presumption of correctness to a trial court’s findings of fact and ... the reviewing court will review the evidence de novo.” Eubanks v. Hale, 752 So.2d 1113, 1122 (Ala.1999). “Our statutory obligation [pursuant to Section 12-2-7(1), Ala. Code 1975,] in a case such as this is to ‘weigh the evidence and give judgment as [we] deem[] just.’” Bentley *244 Sys., Inc. v. Intergraph Corp., 922 So.2d 61, 71 (Ala.2005). See also Jackson v. Strickland, 808 So.2d 993, 995 (Ala.2001) (quoting Smith v. Cook, 220 Ala. 338, 341, 124 So. 898, 900 (1929)) (“[W]here ‘[t]he testimony was taken by depositions’ or was taken in a previous proceeding,.,‘[t]here is ...- no presumption of the correctness’ of the conclusion of the circuit court.’ ”).
Discussion
On appeal, the DLT contends that the disputed property was not a valid easement, that the conveyance of the disputed property by SNDC to Dombrowski” was valid, that Dombrowski validly ’ conveyed his interest in the disputed property to it, and that it was entitled to judicially redeem the disputed property. Whether the DLT is entitled to judicial redemption turns on whether the original conveyance of the disputed property to Dombrowski was valid. If that conveyance was invalid, the DLT cannot judicially redeem property that' Dombrowski and, by'extension, "it did not own. ■
Both parties discuss at length cases involving the public dedication of lands and statutory vacation of publicly dedicated lands.. See §' 35-2-51 and § 35-2-53, Ala. Code, 1975. Those code sections do not apply in this case because there was never an attempt to dedicate the disputed property for the benefit of the public. Instead, the disputed property was separately created in the plat depicting the resub-division of Phase II, with a. notation of “Private Walking Easement” without further explanation. It is undisputed that the disputed property was not included as part of the defined common areas that had been specifically designated for the benefit of the owners of lots, in the subdivision. The declaration of covenants for Phase II did not create any common areas; however, it incorporated a common area that was contained in Phase I. For purposes of resolving the present disputo, we must determine the significance, if any, of the notation on the plat indicating the existence of the “Private Walking Easement.”
We are bound by decisions of the Alabama Supreme Court. § 12-3-16, Ala. Code 1975; McCluskey v. McCraw, 672 So.2d 805, 808 (Ala.Civ.App.1995). The Alabama Supreme Court has held:that easements may be established .in several ways, including “by reference to boundaries or maps.” Helms v. Tullis, 398 So.2d 253, 255 (Ala.1981). In this case, the only way. the disputed property could have been established as a private easement of some type is .through the “reference to- .maps” method.[2] The general rule is that,
“where the owner óf a tract of land adopts a general scheme for its develop *245 ment, divides it into lots, and conveys the lots with restrictions as-to use, such restrictions create equitable easements in favor of the owners of the several lots which may be enforced in equity by any one of such owners.”
Allen v. Axford, 285 Ala. 251, 258-59, 231 So.2d 122, 128-29 (1969)(citing Hall v. Gulledge, 274 Ala. 105, 145 So.2d 794 (1962); Pugh v. Whittle, 240 Ala. 503, 199 So. 851 (1941); Scheuer v. Britt, 218 Ala. 270, 118 So. 658 (1928); and McMahon v. Williams, 79 Ala. 288 (1885)). “It is well settled that ‘[o]ne who purchases land subject to, or with notice of, an easement takes the estate subject to such easement.’ ” Chestang v. Burkett, 717 So.2d 379, 381 (Ala.Civ. App.1998) (quoting Brown v. Alabama Power Co., 275 Ala. 467, 470, 156 So.2d 153, 155 (1963)).
Whether an easement was created is a question of intent.
“The paramount objective of a court in interpreting and construing any voluntary conveyance, whether an easement or otherwise, is to ascertain and effectuate the intent of the grantor unless the intent runs contrary to some rule of law.”
I Jesse P. Evans III, Alabama Property Rights and Remedies § 6.3[b] [vii] [2] (5th ed. 2012)(footnote omitted). The preponderance of the evidence in this case indicates that the notation on the plat was not intended to create an easement for the owners of lots in the subdivision. As noted, although the disputed property could have been created as an easement for lot owners in the subdivision to access the beach by including it within the common areas, that was not done. The lots in Phase II were all beach-front lots with direct access to the beach; therefore, the purpose of the disputed property was not to provide beach access to the other lot owners within Phase II. Instead, the preponderance of the evidence indicates that, in platting the disputed property as a “Private Walking Easement,” SNDC intended to reserve the disputed property for its own purposes, as shown by the testimony of Stewart:
“Q; Okay. All right. So you would agree with me that the property and the six-foot-wide private walking easement also shown in the resubdivision of Phase 2, they were not labeled ‘common areas’ on the plat? .
“A. That’s correct. .
“Q. Okay. And you-it sounds to me like your' testimony was-but I want you to clarify this-was that you put those easéments on the plat to reserve the right to use .them as easement for future phases if you wanted to?
“A. That was the intent. •
“Q. Okay. You did not intend to dedicate it to the public?
“A. I did not-I did not.”
As further demonstrated by Stewart’s testimony, SNDC did not take the position that the notation it entered on the Phase II resubdivision plat impaired its ability to transfer the disputed property:
“Q. At the time that you sold the property to ... Dombrowski back in 1994, there’s no doubt in your mind that [SNDC] had the right to sell him the property?
“Á. That’s correct. And if I can éx-pand on that, he got title insurance that insured that 10-foot easement as well as thé other two properties, and there was no denying that [SNDC] had clear title to the deed.
“Q. And you were not trying to sell him a common area, you were selling him a piece of property that [SNDC] owned; is that correct?
“A, That’s correct.”
We note that, although SNDC sold at least two lots with .reference to the plat *246 that contained the disputed property before the 1994 conveyance to Dombrowski, the evidence is insufficient to establish that any purchasers of the lots viewed the notation of “Private Walking Easement” as creating an equitable right in their favor. Stewart testified: “I would say that prior to selling [the disputed property] to [Dom-browskij, I’m sure I might have told somebody that was interested in a lot that I had a 10-foot easement that [SNDC] owned that would be used for [beach] access. After I sold it to [Dombrowski], I never said it.” Stewart’s testimony was only that he “might have” told a prospective lot owner that the purpose of the disputed property was to provide beach access. There is no evidence to establish that a purchaser would have believed that the notation on the plat created any equitable rights in the purchaser. See Stringer Realty Co. v. City of Gadsden, 256 Ala. 77, 81, 53 So.2d 617, 620 (1951)(holding that the description of property on a plat as a “ ‘Private Park’ ” did not operate as a conveyance of an easement for the benefit of the subdivision owners and that the property could be considered only as “private property exclusively owned and for the sole use of the owner”). The preponderance of the evidence shows that the notation of “Private Walking Easement” on the plat did not create an easement for the benefit of the subdivision lot owners or otherwise limit the use of the disputed property. Therefore, the conveyance of the disputed property to Dombrowski in 1994 was not void.
Although the conveyance to Dom-browski was valid, Dombrowski’s ownership interest of the disputed property was extinguished when the State Land Commissioner foreclosed on the disputed property in the tax sale. The issue then becomes whether the DLT was entitled to judicially redeem the disputed property under § 40-10-83, Ala. Code 1975.
“Under Alabama law, after a parcel of property has been sold because of its owner’s failure to pay ad valorem taxes assessed against' that property (see § 40-10-1 et seq., Ala. Code 1975), the owner has two methods of redeeming the property fi’om that sale: ‘statutory redemption’ (also known as ‘administrative redemption’), which requires the payment of specified sums of money to the probate judge of the county in which the parcel' is located (see § 40-10-120 et seq., Ala. Code 1975), and ‘judicial redemption’ under §§ 40-10-82 and 40-10-83, Ala. Code 1975, which involves the filing of an original civil action against a tax-sale purchaser (or the filing of a counterclaim in an ejectment action brought by that purchaser) and the payment of specified sums into the court in which that action or counterclaim is pending. See generally William R. Justice, ‘Redemption of Real Property Following Tax Sales in Alabama,’ 11 Cumb. L. Rqv. 331 (1980-81).”
First Props., L.L.C. v. Bennett, 959 So.2d 653, 654 (Ala.Civ.App.2006).
The DLT asserts that it, or its predecessor, Dombrowski, had retained exclusive possession of the disputed property and that it was therefore entitled to judicially redeem the disputed property regardless of the lapse of time. See § 40-10-82, Ala. Code 1975 (“There shall be no time limit for recovery of real estate by an owner of land who has retained possession.”).
“The purpose of § 40—10—83[, Ala. Code 1975,] is to preserve the right of redemption without limit of time, if the owner of the land seeking to redeem has retained possession. Moorer v. Chastang, 247 Ala. 676, 26 So.2d 75 (1946). The character of -possession need not be *247 actual and peaceable, but may be constructive or scrambling. Tensaw Land & Timber Co. v. Rivers, 244 Ala. 657, 15 So.2d 411 (1948).”
O’Connor v. Rabren, 373 So.2d 302, 306 (Ala.1979). Dombrowski and his son, in their affidavits, gave testimony indicating that the Dombrowski family had main-' tamed exclusive, actual possession of the disputed property since before the tax sale. Among other things, they asserted that the Dombrowski family had maintained the disputed property by enhancing sand dunes, by constructing and installing fencing, and by planting sea oats. MPOA, On the other hand, asserted in its motion for a summary judgment that the Dom-browski family did not have exclusive possession of the disputed property. MPOA submitted affidavits from neighboring lot owners in the subdivision in which they testified that the Dombrowski family had not maintained exclusive possession of the disputed property. MPOA argued that the DLT did not have actual or peaceful possession, that the DLT did not do anything to distinguish the disputed property from the lots surrounding it, and that MPOA had staked the property for a survey in 2009 or 2010. MPOA also asserts in its appellate brief that the DLT’s characterization of the evidence surrounding its possession of the disputed property as “undisputed” is incorrect and that the evidence regarding possession of the disputed property was “conflicting at best.” However, the affidavits submitted by MPOA are vague as to their assertions regarding the DLT’s possession of the disputed property and do not actually dispute the DLT’s assertion that it retained exclusive possession. Therefore, based on the evidence, we determine that the DLT was in sufficient possession of the disputed property for purposes of proceeding with a claim for judicial redemption.
However, MPOA also argues that the DLT is estopped from judicially redeeming the disputed property based on the equitable defenses of laches and estop-pel. MPOA asserts that the DLT had actual knowledge of the tax sale for over a decade before commencing the action to redeem the disputed property. Because “a judicial-redemption claim brought under § 40-10-83 sounds in equity, not in law,” it is subject to equitable defenses. See First Props., L.L.C., 959 So.2d at 656.
“ ‘ “Laches” is defined as neglect to assert a right or a claim that, taken together with a lapse of time and other circumstances causing disadvantage or prejudice to the adverse party, operates as a bar.’ Ex parte Grubbs, 542 So.2d 927, 928 (Ala.1989) (citing Black’s Law Dictionary 787 (5th ed. 1979)). It is an equitable doctrine applied by the courts to prevent a party that has delayed asserting a claim to assert that claim after some change in conditions has occurred that would máke belated enforcement of the claim unjust. Ex parte Grubbs, 542 So.2d at 929. A party asserting laches as a defense is generally required to show that the plaintiff has delayed in asserting a claim, that that delay is inexcusable, and-that the delay has caused the party asserting the defense undue prejudice. Id.”
Elliott v. Navistar, Inc., 65 So.3d 379, 386 (Ala.2010). The evidence indicated that Stewart purchased the disputed property in 2001 at a tax sale. Dombrowski testified in his deposition that he knew as early as 2001 that Stewart had purchased the disputed property. MPOA asserted to the trial court that Dombrowski had knowledge of the tax sale for a decade before the DLT commenced the redemption action and that the DLT’s inaction prejudiced MPOA because it had to defend a 17-year-old tax sale and because it would incur additional costs “in purchasing an *248 other beach-access easement- at a higher price in today’s market” if the DLT were to prevail on. its claim. MPOA proved that the DLT delayed in asserting its judicial redemption claim, that the delay is inexcusable, and that the delay has caused MPOA' undue prejudice. See Elliott, 65 So.3d at 386. Therefore, we determine that the doctrine of laches applies so as to prevent the DLT from asserting its' judicial-redemption claim. Accordingly, we affirm the trial court’s judgment in favor of MPOA."
AFFIRMED.
Thompson, P.J., and Pittman, J., concur.
-Moore, J., dissents, with-writing, which Thomas, J., joins.

. Neither party raises on appeal any issue regarding the DLT's suing in its own name as opposed to the Dombrowskis, as cotrustees, suing on behalf of the trust. See Rule 17(a), Ala. R. Civ. P. ("[A] ... trustee of an express trust ... may sue in that person’s own name without joining the party for whose benefit the action is brought.”). See, e.g., San Juan Basin Royalty Trust v. Burlington Res. Oil & Gas Co., L.P., 588 F.Supp.2d 1274, 1279-80 (D.N.M.2008) (holding that for purposes of Rule 17, Fed. R. Civ. P., suit could be brought in the name of a trust or by a trustee on behalf of the trust).

. This method of creating an easement has been questioned. See I Jesse P. Evans III, Alabama Property Rights and Remedies § 6.3[h](5th ed. 2012):
. “While Helms v. Tullis does recognize that a private easement may be created by reference to boundaries or maps, there is little or no authority, outside of the passing reference in that decision, for such. Ordinarily, under our platting and subdivision statutes, reference-to an easement or the like on a map or plat operates as a dedication of such to the public.
"The general rule is that there can only be a ‘dedication’ to the public for a public use, and a private right of way cannot be created by dedication. Moreover, where there is a complete absence of a grant, express or implied, or a prescriptive use, the theory of an easement in favor of all purchasers .of a lot in a subdivision for private use cannot be sustained. Thus, it has been held that the designation of a tract of land as a ‘Private. Park’ on a subdivision map or plat [does] not [create] an easement in the area by grant, prescription or implication,”
(Citing in footnotes Stringer Realty Co. v. Gadsden, 256 Ala. 77, 53 So.2d 617 (1951); footnotes omitted.)