56 So.2d 625

**CRUMP v. KNIGHT.**

6 Div. 361.

Supreme Court of Alabama.

Jan. 24, 1952.

Drennen & Drennen, Birmingham, for appellant.

Young & Young, Vernon, for appellee.

BROWN, Justice.

This appeal is by the plaintiff from a judgment in a statutory action in the nature of ejectment, brought against the defendant for the recovery of a forty-acre tract of timber land, on which at a time in the past there had been a habitation, evidenced by a house place, the remains of an old chimney, surrounded by fruit trees and which the tract book kept in the office of the Probate Judge of Lamar County "as required by law", offered and received in evidence, shows at page 172 was sold and conveyed by the United States Government to Sandy Truelove on January 19, 1906. Code of 1940, Title 7, § 387; Perryman v. Wright, 189 Ala. 351, 352, 66 So. 648; Aiken v. McMillan, 213 Ala. 494, 106 So. 150.

The record shows that said judgment was entered on a verdict which was returned after the court had instructed the jury in the oral charge as follows:

"The Court: Gentlemen, as stated by Mr. Fite a minute ago, I think the Supreme Court could have eliminated this if they had done what they should have, if they had told the trial Court what should have been done. As Mr. Fite says, looks like they avoided rendering a decision on this particular deed. I read some law last night and I am inclined to believe and I am so holding that the Defendant is entitled to the affirmative charge, which means he is entitled to a verdict at your hands. He is entitled for the Court to tell you to render a verdict in his favor. There come occasions where the Court takes it away from the Jury and tells the Jury what to do and those questions are usually raised by demurrers of the evidence, motions to exclude evidence or asking for the general affirmative charge on behalf of one party. In this case as previously told you there is in evidence a deed under which the Plaintiff, Mr. Crump, claims was executed in 1926 by two negroes, I presume they were negroes, I think they were negroes. That deed was recorded on the date that the deed to the Plaintiff is dated. There was a period of twenty years or right at twenty years, there was an unrecorded deed. Now, the law is very plain where a man is a bona fide purchaser, without notice of a piece of real estate and without notice that some one else has an unrecorded deed to that property then that deed will not prevail against that bona fide purchaser. Now, to be a bona fide purchaser, he must have paid for the property himself, have a good deed to the property and that he did not have notice either actual or construc-

tive of the unrecorded deed. It doesn't mean, gentlemen of the jury, in this case that an unrecorded deed is not a good deed but the unrecorded deed as the Court holds in this case here there wasn't sufficient notice given to a bona fide purchaser. You may have some deeds at home that are not recorded and they may be just as good a deed as if they were recorded but your predecessor has given notice he owns this piece of property. You must remember this was a wild piece of land; no house on it. The only act of possession shown by the Plaintiff was in his predecessors, what was that gentleman's name?

"Mr. Young: John Northington.

"The Court: John Northington sent this Plaintiff up to get some rock and fence posts and some pine knots, something like that. There is no evidence that this Defendant had notice of that at all. There was no fence built by John Northington or this Plaintiff until shortly before this first law suit was started. The property, as you heard stated by Mr. Young and as you heard testified, was never assessed for taxes until about the time John Northington made a deed to the Plaintiff. The defendant and his predecessors had assessed this property from the time they got possession of it or got a tax deed. Of course, tax records are a matter of public record. The mere fact that Mr. Crump put a wire fence around, that is sufficient notice from that time and thereafter that he was claiming it. That is one way to show that you claim something, fence it up. But that didn't come in time to operate against this Defendant, and, gentlemen, under the law—as the Court sees the law—in this particular case, the Court charges you that under the evidence in this case, you should return a verdict in favor of the defendant and the Court further charges you that it is your duty to return a verdict in favor of the Defendant. If I am wrong, they can correct me down at Montgomery. The court sees the law to be as I have stated to you. and charge you and ask that one of your number sign this as foreman which is a verdict in favor of the Defendant. That is giving the Defendant possession and hold he has the best title and is entitled to the land. And, the form of your verdict will be 'We, the Jury, find the issue in favor of the Defendant.' "

At the conclusion of the court's oral charge the plaintiff reserved an exception thereto, which was well taken. Davidson v. State, ex rel. Woodruff, 63 Ala. 432.

Under the heading, "Given and refused charges," there appears on page 4–A of the record the following: "1. I charge you gentlemen of the jury that if you believe the evidence in this case you should return a verdict in favor of the defendant. Given. V. W. Elmore, Judge."

"2. If you believe the evidence in this case, you must return a verdict for the Plaintiff. Refused, V. W. Elmore, Judge." There is nothing in the record other than the endorsement "given" to show that the written affirmative charge was read to the jury.

The decision provoking the criticism of this Court in the oral charge is reported as Crump v. Knight, 250 Ala. 393, 34 So.2d 593. The holding on that appeal is stated in the single headnote: "Where controversy between parties was as to title to property and trial court found that complainant failed to establish such possession as warranted maintenance of his bill, finding ended any litigable controversy between parties, and dismissal of original bill carried with it cross-bill which was not rested upon special equity independent of equity in original bill, and court did not have jurisdiction to determine validity of tax sale to respondent's predecessor in title or quiet title of respondent or enjoin complainant from setting up claim or title to property as prayed in cross-bill. Code 1940, Tit. 7, § 1109." This holding is sound and is supported fully by the authorities cited in the body of the opinion.

It is well settled law that every court has full authority to determine whether or not it has jurisdiction of the subject-matter and of the parties presented to it by the pleadings and evidence, and if it once determines that it is without jurisdiction of the subject-matter, it should not proceed further. "Courts acting without authority can impart no validity to their

proceedings and their judgments are assailable in any proceeding." 2 Mayf.Dig. p. 936, § 17; Wightman v. Karsner, 20 Ala. 446; 7 Mayf.Dig. p. 216; Disbrow v. Jones, Har.Mich. 48–59; Hiscock v. Norton, 42 Mich. 320, 324, 3 N.W. 868; Wilkinson v. Henry, 221 Ala. 254, 128 So. 362, 70 A.L.R. 712.

In addition to the tract book required to be kept by law in the office of the judge of probate, the plaintiff offered in evidence the following: A deed of conveyance in due form from Sandy Truelove and his wife Susan Truelove to Willie Austin of date January 9, 1917, recorded in the office of the judge of probate on January 11, 1917, reciting a consideration of $40; a certified copy of a warranty deed from W. L. and Willie Austin to J. A. Northington, reciting "for $5.00 and other consideration", dated December 13, 1926, conveying the land in controversy to said Northington, recorded in the office of the Judge of Probate of Lamar County on November 21, 1946. It appearing that the original deed had been lost or misplaced during the trial in the former litigation, a certified copy of a warranty deed from J. A. Northington to J. R. Crump, the plaintiff, was offered in evidence. Said deed bore date of November 21, 1946, and recited a consideration of $600 and was recorded January 3, 1947. It was shown that the original deed had been lost since the first trial. This evidence shows in the plaintiff a complete paper chain of title from the government into plaintiff.

Crump, the plaintiff, testified in his own behalf and examined a number of witnesses, which testimony goes to show that the plaintiff and his predecessor in title exercised acts of ownership and possession over the property, took wood, posts and stone therefrom and put up a one strand barbed wire fence around the same; that Northington put up "no trespassing" signs on the premises and signs warning others to "keep off" and exercised other acts of ownership over the property.

The defendant, who claimed title through a proceeding in the Probate Court of Lamar County ordering the sale of the lands in controversy for the payment of delinquent taxes, allegedly assessed against Willie Austin for the tax year 1925–26, had the burden of showing compliance with the requirements of the provisions of the statute then in force, designed to confer jurisdiction on the probate court—a court of statutory and limited jurisdiction—to grant such a decree. Smith v. Cox, 115 Ala. 503, 508, 22 So. 78; Johnson v. Harper, 107 Ala. 706, 708, 18 So. 198; 7 Mayf.Dig. p. 877, "Tax Sales, Titles." The defendant introduced the following documentary evidence:

(1) A tax deed executed by S. G. Johnson, as "Judge of Probate", June 13, 1929, reciting that at said sale on the 10th of June, 1927, "J. B. Mixon became the purchaser of said lands at and for the sum of said taxes, costs, and expenses, and forthwith paid said sum to said Tax Collector, and received from said Collector a certificate of said purchase. * * *," and further reciting:

"Now, Therefore, I, S. G. Johnson, as Probate Judge of said county of Lamar, under and by virtue of the provisions of section 4074 of the Code of Alabama of 1896, and in consideration of the premises above set out, and in further consideration of the sum of One Dollar to me in hand paid, have this day granted, bargained, and sold, and by these presents do grant, bargain, sell and convey unto J. R. Mixon, who is the present owner and holder of said certificate of purchase all the right, title and interest of the said Willie Austin, owner as aforesaid of said land, and all the right, title, interest and claim of the State and county on account of said taxes, or under said decree in and to the following described lands, hereinafter referred to, to-wit:

"Northwest Quarter of the Southwest Quarter, Section Twenty-Four, Township Twelve, Range Sixteen. lying and being situated in said county and State, to have and to hold the same, the said rights, titles and interests unto himself, the said J. R. Mixon and his heirs and assigns forever, but no right, title or interest of any reversioner or remainderman in said land is conveyed hereby."

(2) Deed from J. R. Mixon to his wife Susie purporting to convey such title as he had in the land in controversy, together with other lands, "in consideration of one dollar and love and affection", dated Sept. 14, 1936, acknowledged before the judge of probate and filed for record in the probate office on the day of its execution.

(3) The original record of a deed from J. R. Mixon and Susie Mixon to B. M. Knight dated December 31, 1936, acknowledged before a justice of the peace on the date of its execution and filed for record "at 10 o'clock a. m. on the 25th day of November, 1936, and recorded in Vol. 72, p. 98, of the record of deeds." Said deed recites a consideration of $140 and describes the lands purported to be conveyed as follows: "The Northwest ¼th of the Southwest ¼th of Section 24, Township 12, Range 16 West, known as the Willie Austin 40 acres of land. (The above is filled in with indelible pencil and underneath this portion of the description is typed the following: *The grantors herein convey only such title as is vested in them under Tax Title conveyed by S. G. Johnson, Judge of Probate,* Lamar County, Alabama, dated June 13, 1929, and recorded in Vol. 55, page 120.") [Italics supplied.]

■ One who takes under a quitclaim deed acquires only such title and interest as his grantor had, and is not within the protection of a *bona fide* purchaser. Hunter v. Briggs, 184 Ala. 327, 63 So. 1004; Vaughn v. Brue, 245 Ala. 107, 16 So.2d 17, 150 A.L.R. 668.

The evidence further shows that prior to filing the bill to quiet title eventuating in its dismissal, both parties assessed the property for taxes, but neither had had other than a scrambling possession. The defendant surveyed and marked the boundaries and tore down "No Trespassing" and "Keep out" signs and observed the wire fence placed on the land by John Northington before he sold to plaintiff. The defendant offered other evidence as follows:

(4) The original tax sale and redemption record, evidencing the decree of sale made May 9th, 1927, which is as follows:

"Beat #7
State of Alabama, Lamar County
v.
Willie Austin
Description of Property
NW ¼ of SW ¼ 40 acres, Sec. 24, Township 12, Range 16
To the Probate Court of Lamar County

"In compliance with Section 240 of the General Revenue Act 1919, I, as Tax Collector of Lamar County, hereby report to you that I have been unable to collect the taxes assessed during the tax assessment year beginning December 1, 1925 against Willie Austin, the owner of the following described lands, without sale of such lands.

| "E. F. Miller, Tax Collector, State Tax | .33 |
|---|---|
| Special State Tax | 52 |
| County Tax | 66 |
| Special County Tax | 33 |
| Special County School Tax | 52 |
| Interest | 12 |
| Assessor's Fee | 50 |
| Collector's Fee | 1.00 |
| Probate Judge's Fee | 1.00 |
| Printer's Fee | 2.60 |
| Total | $7.58 |

(Endorsed on record in pencil).
" 'Printers fee paid
Kirby T. Mills
" 'Fee paid J. T. Maddox
Judge of Probate'
"Notice issued April 11, 1927          served
———— 192—
"Order Published three weeks in Lamar Democrat.
"Tax Collector's
Return ——————————————————
J. T. Maddox, Judge of Probate
· · · · · · · · · · · · · · · · · · · · · · · · · · · · · ·
"The State of Alabama    } Probate Court,
"Lamar County              } May 9, Term, 1927
"Present the Honorable J. T. Maddox, Judge of Probate:

"It appearing to the Court that taxes have been assessed against the persons and lands mentioned in this cause to the amount of two and 48/100 Dollars for the year, 1926 and the same are still due and unpaid; and it further appearing that notice of this proceeding has been given, as required by

law, that a motion would be made for a decree of sale of said lands, for the payment of said taxes and the costs and charges thereon; and no valid defense having been shown, it is therefore considered and decreed by the Court that the State of Alabama has a lien on the following described lands: Northwest ¼ of Southwest ¼, Section 24, Township 12, Range 16 for the amount of Seven and 58/100 ———Dollars, being the amount of State and County taxes due and unpaid and the costs and charges thereon. It is further ordered, adjudged and decreed by the Court that the said lands, or so much of the same as may be necessary, be sold for the payment of said delinquent taxes, and the costs and charges thereon due, and of the expenses of said sale.

"J. T. Maddox,

"Judge of Probate

- - - - - - - - - - - - - - - - - -

|  | Taxes and |  |
|---|---|---|
| "To Whom Sold | Costs | Amount |
| "J. R. Mixon |  | 7.58 |

"Date of Sale: June 10, 1927. Date of Redemption ——— 192—

"Receipts and Remarks: A tax title has this day been issued to J. R. Mixon for the above described land. This June 13, 1929.

"S. G. Johnson,

"Judge of Probate

- - - - - - - - - - - - - - - - - - "

The court over plaintiff's objection permitted in evidence at defendant's insistence the following notice published in the Lamar Democrat:

"Delinquent Tax Notice
"The State of Alabama
    Lamar County
"To: R. H. Anderson, Mrs. W. H. Collins, C. R. Hollis, Willie Austin (and others)

"Take notice that the Tax Collector has filed in my office a list of the Delinquent Tax Payers and of Real Estate upon which taxes are due, and herein is reported as assessed to you the following property, to-wit:

"(Then the property is set out according to beat numbers. Under Beat No. 7 is the following:)

"Beat No. 7. Assessed to Willie Austin: NW-¼ of SW-¼, S. 24, T. 12, R. 16—40 acres. Taxes and costs $5.26.

"This is to notify you to appear before the Probate Court of said County on the 9th day of May, 1927, then and there to show cause, if any you have, why a decree should not be made for the payment of taxes assessed upon the same, and fees and costs.

"This April 11, 1927.

"J. T. Maddox, Judge of Probate."

The first notice appeared in the Lamar Democrat on April 13, 1927, and in the following issues of April 20th, April 27th and May 4th, 1927.

We note here that said published notice omitted the words italicized below, which the statute prescribed it should contain: "This is to notify you to appear before the probate court of said county *at the next term thereof, commencing on Monday, the* — day of ———, 19—". General Acts 1919, p. 354, § 243.

In the notice to "Delinquent Tax Payers," as provided for by § 243 of the General Acts of 1919, the legislature must have regarded the language therein contained as important, as we find it repeated in §§ 245 and 249, pp. 354, 355, carried into the Acts of 1935, page 256, and eventually into the Code of 1940, Title 51, §§ 252, 253.

We note further that the notice provided for in § 243 of the Act, General Acts of 1919, p. 353, is the notice required to be given to *residents of the county.* Section 243 provides further: " * * * such notice must be served by the tax collector, or his deputy, by handing a copy thereof to the party to whom it is addressed, or his agent, or by leaving a copy thereof at the residence or place of business of such party, or his agent; and with his endorsement thereon, showing how and when served, showing his reason for not serving the same, it must be by the collector or his deputy returned into court *on or before the first day of the next term thereof.* If the party against whom such assessment was made has since died, and letters testamentary or of administration have been granted

upon his estate, such notice must, in like manner be served on his personal representative, *if a resident of the county.* If the property or other subjects embraced in any assessment were returned or listed by a guardian, or other person, for a minor or person of unsound mind or by a trustee for his cestui que trust, except husband or wife, or by personal representative for the estate of any deceased person, or by a public officer, receiver, or appointee of any court, such notice must in like manner be served *on the party making the return,* or his successor, and also by publication or posting, as provided in the *next succeeding section;* and the book to be prepared and delivered to the judge of probate by the collector must show in each case, by whom such returns were made." [Italics supplied.]

The next succeeding section is section 244, which provides: "If the person against whom such assessment is made is a nonresident of the county, and has no agent therein known to the tax collector, or if he has died since making the return and there is no executor or administrator of his estate residing in the county, such notice may be given by publishing the same in a newspaper published in the county, or if no newspaper is published therein, by posting the same at the courthouse of the county for three weeks."

Section 245, p. 354, applies only to owners "unknown", whether they be residents or not of the county.

Section 246 provides: "The publication of notices under the three preceding sections is governed by the provisions of this act relating to the publication of notices of sale of land, so far as the same may be applicable, and the tax collector may select the newspaper in which any notice under this article shall be given, but all legal notices relating to the sale of land for taxes shall be inserted in the same newspaper for the tax year."

Section 249 provides *inter alia* as follows: "If service of *such notice is perfected ten days before the commencement of the term to which the same is returnable,* the cause shall stand for trial at such term; and if no defense is interposed, or if interposed and on trial thereof the same is adjudged insufficient in law, or is not sustained by the evidence adduced, the probate court shall make and enter on such book or docket a decree of sale, substantially in the following form: * * *." [Italics supplied.]

Section 250 provides *inter alia* as follows: "Immediately at the end of any *term of court* at which any decree for sales of real estate for the payment of taxes are rendered, or as soon thereafter as practicable, the tax collector shall proceed to enforce such decree by sales of real estate ordered to be sold, and to this end *shall give notice for thirty days before the day of sale, by publication for three successive weeks in some newspaper published* in the county, or at least three weeks before the day of sale shall post a notice at the courthouse of his county, and at some public place in the precinct in which the real estate is situated, that at the time specified therein, he will proceed to sell such real estate separately, *describing such portions as are embraced in each decree,* and stating the amount for which each decree was rendered (without stating the items of which said decree is composed) and the person against whom the taxes embraced in such decree were assessed, or if assessed to 'owner unknown,' stating that fact. * * *" [Italics supplied.]

Section 241, p. 352, prescribing the method of making up the tax sale record or docket provides, *inter alia,* "* * * The description of such real estate, or right or interest or easement therein, shall be entered in alphabetical order, by precincts of the residence of the owners, if known, and they reside in the county; *but if they are unknown and do not reside in the county, then by the precincts in which the real estate is situated."* [Italics supplied.]

Section 248, p. 355, makes the entries in the tax collector's book *prima facie* evidence of the assessment and the amount of the taxes due. Thus said book by the entry showed the lands were assessed in Precinct "7" and classified Willie Austin as a nonresident of the state.

Under the provisions of the statutes quoted, said taxpayer was entitled to 30 days' notice perfected ten days previous

to the term of court at which his land was to be condemned for sale. These observations show that the provisions of the statute were not complied with and that the court was without jurisdiction to enter the decree and the sale and tax deed entered in pursuance thereof were void and conferred no title on the purchaser thereunder. Smith v. Cox, 115 Ala. 503, 22 So. 78.

The notice required by the applicable statutes treated was not of an act "to be done on a specified day", but at a term of the probate court commencing at a time fixed by law, if perfected ten days previous to such term of court. Therefore, § 718, Title 7, Code of 1940 was not applicable. The probate courts of the several counties in this state have regular terms fixed by statute. Code 1940, Tit. 13, § 295.

The circuit court erred, therefore, in overruling the plaintiff's objection to the tax sale proceedings, in directing a verdict for the defendant in the oral charge, Code 1940, Tit. 7, § 270, and in refusing the affirmative charge requested in writing by the plaintiff.

For the errors noted the judgment appealed from is reversed and the cause is remanded.

Reversed and remanded.

LIVINGSTON, C. J., and LAWSON and STAKELY, JJ., concur.