88 So.2d 367

**H. H. GARLAND et al.**

v.

**Foster L. CLARK, Sr., et al.**

6 Div. 839.

Supreme Court of Alabama.

June 14, 1956.

Frank M. James and Watts E. Davis, Birmingham, for appellees.

Smyer, Smyer, White & Hawkins, Birmingham, for appellants.

PER CURIAM.

This is a bill in equity with reference to the use of a lot lying west of an area known

as the Walnut Grove Methodist Church Cemetery in Jefferson County.

The cemetery and the above mentioned area are embraced in a five acre tract conveyed on September 9, 1881 to named trustees and their successors "for the Jonesboro Circuit, Birmingham District North Alabama Conference of the Methodist E. Church sureties, etc." The name has been changed to the Walnut Grove Methodist Church. The area is triangular in shape and situated in the southeastern corner of a named quarter section. Since about the time of its acquisition in 1881 the cemetery has been used as such. It has had a low fence around it which separated it from the half acre in question. The cemetery will be referred to as tract "A" as was done in the trial. The lot here in question is referred to as "B". A church building was erected on it and used as such until about 1920 when the church authorities for a consideration sold to the Tennessee Coal and Iron Company the area lying west of tract "B". The money they received from such sale was used in erecting a new church building on another lot having no connection with tract "A" or "B". In August 1951 the church authorities, acting in accordance with the regulations prescribed by the church discipline, sold and conveyed tract "B" to appellant H. H. Garland. He has enclosed the lot with a cyclone chain link fence.

From time immemorial burials have been made in the cemetery, the cortege passing over tract "B" where the hearse and escort would stop and remain during the funeral service. The body of deceased was carried through the entrance gate in the old fence which separated tracts "A" and "B". The funeral vehicles did not, as a rule, pass into tract "A"—the cemetery—but parked on tract "B" during the service, at which place they also parked for church services. The fence which Garland has erected closed the opening between tracts "A" and "B".

There is an area south of the cemetery, about fifty-seven by forty-six feet, over which a roadway to a public highway is now used to enter the cemetery and is suitable for parking. This is included in the deed to the trustees for the church but is not used. When the new church was built in about 1920, the organization quit using the old church equipment and building standing on tract "B" except for burial services: it was so used for about five years when it was entirely removed.

The evidence also shows that it was the custom of the church trustees throughout the years since acquiring the area with reference to burials in tract "A" (never in tract "B") to execute a deed or grant permission for burial in the cemetery without charge to church members or to non-members who had relatives buried there, and sometimes to persons who were not members and had no relatives buried there; but that the cemetery was never thrown open to the public at large for burial purposes. The public has never asserted any control over it as a cemetery, and no burials were had in it except in lots assigned by the church. While the church authorities have not kept the cemetery cleaned up, this was done by contributions by interested persons to Frank Owens, during his lifetime, as a member and officer of the church in charge of the cemetery. He looked after it and sold lots as indicated above.

The deed to the trustees of the church made in 1881, referred to above, contains a clause that it was to the named trustees "in trust for the sole use and benefit of the M.E. Church South Alabama". It contained no condition or provision for a reverter or forfeiture for not using the cemetery as directed, nor other penalty. The burials in the cemetery have been very few each year: we would say not more than three to six a year according to the evidence.

The bill of complaint is filed by certain named persons alleging that they "each have relatives and members of their immediate family buried therein, and each of these complainants anticipate and contemplate the exercise of their rights to bury other members of their family and relatives in said cemetery at future times." That the cemetery, including tract "B",

"has long since been set aside and dedicated as a burial place for numerous and sundry families, some members of the Walnut Grove Methodist Church, and others non-members and that all of said cemetery has been for many years actively used as the burial ground for those entitled to the use thereof for such purposes and was and is recognized and accepted by the public as such a burial ground".

The bill prays for a final decree (1) declaring that the property described in paragraph two of this bill of complaint was dedicated as a part of Walnut Grove Cemetery. (That tract is parcel "B" described above, on which there has never been a burial.) And (2) declaring that tract "B" was held by the trustees of the Walnut Grove Methodist Church and was not subject to be sold or title conveyed to appellant Garland.

The bill further sought an injunction against Garland and the persons named as trustees and other officers of the church who are made parties, enjoining them from obstructing the use of said parcel "B" as a part and parcel of the cemetery. There is also prayer for general relief.

After respondents' demurrer to the bill was overruled, they filed answer. The court heard the evidence and rendered a final decree declaring (1) that parcel "B" has been dedicated to the public for use as a cemetery and that complainants are entitled to relief as prayed for; and (2) that the deed from Walnut Grove Methodist Church to respondent Garland, above referred to, is hereby cancelled, set aside and annulled, and ordered to be so marked on the record; and (3) directed the register "to issue a mandatory order directed to H. H. Garland requiring him to remove the fence heretofore erected on said property, thereby cutting off said strip of land from the remainder of the cemetery, within thirty days from the date of this decree, and from further obstructing, or interfering with the use of said strip of land as a part of said cemetery".

The failure to use the lot as provided in the deed, and its sale to Garland, did not serve ipso facto to affect any right of complainants or confer upon them any remedy in that respect. 10 Am.Jur. 670, section 118, page 620, section 51. As to the right to sell and reinvest for the prescribed use, see Heustess v. Huntingdon College, 242 Ala. 272, 5 So.2d 777; section 57, Title 58, Code; 14 C.J.S., Charities, § 48, p. 504. That part of the decree cancelling the deed to H. H. Garland is not supported by any legal principle which complainants may assert.

We will consider the other contentions made in the order set out in the final decree. That feature of the decree which declares that parcel "B", above mentioned, was dedicated to the public and was a part and parcel of the Walnut Grove Cemetery is the important question in this case.

■ A cemetery may be public or private. " 'Burial places for the dead are indispensable. They may be the property of the public, devoted to the use of the public; or the owner of the freehold may devote a part of his premises to the burial of his family or friends. It is but a just exercise of his dominion over his own property.' " The foregoing is by Judge Brickell in Kingsbury v. Flowers, 65 Ala. 479, 485, and is quoted in Bryan v. City of Birmingham, 154 Ala. 447, 451, 45 So. 922, 923, and so declared in 10 Am.Jur. 487, section 4. A municipal corporation may hold property in trust for a public burial ground, or in a private or proprietary character as a private corporation. 10 Am.Jur. 487, section 3; section 478, Title 37, Code.

■ We observe that a dedication is and must be to the public and that there is no such thing as a dedication to an individual. Hill v. Wing, 193 Ala. 312, 69 So. 445; 16 Am.Jur. 359, section 15, also page 349, section 5. The bill of complaint does not claim and the decree does not declare the existence of a private easement in favor of complainants or any of them. West v. West, 252 Ala. 296, 40 So.2d 873. Land may be dedicated to the public for cemetery purposes. "The intention of the owner of the land to dedicate it for a public cemetery, together with the acceptance

and use of the same *by the public,* or the consent and acquiescence of the owner in the long-continued use of his lands for such purpose, are sufficient." 10 Am.Jur. 489, section 6. In this State twenty years is usually the required period. Locklin v. Tucker, 208 Ala. 155, 93 So. 896.

In 16 Am.Jur. 359, section 10, it is said: "The public must be a party to every dedication. In fact, the essence of a dedication to the public uses is that it shall be for the use of the public at large. There may be a dedication of lands for special uses, but it must be for the *benefit of the public, and not for any particular part of it.* * * * In short, the dedication must be made to the *use of the public exclusively, and not merely to the use of the public in connection with a user by the owners in such measure as they may desire."* (Italics supplied.)

■ The approach to a cemetery may be dedicated to the public for public use in connection with a dedicated cemetery.— Scruggs v. Beason, 246 Ala. 405, 20 So.2d 774. In that case it was said that the graveyard was located about six hundred feet from a highway in the country, with a roadway to it from the highway. The question was as to an obstruction of the roadway. There were about one hundred and twenty graves in the cemetery. (The number is not given in the instant case.) From about 1868, it had been used as a graveyard by the surrounding community. The members of the community would meet to clear it off. It does not appear how it started as such, or who owned and dedicated the land, or whether there was any church organization connected with it, or that it was necessary or customary to get a deed or some sort of permission from any authority, or that any person claimed the right to or did supervise its use. In that case the complainants had relatives buried in the cemetery, and the roadway in question was the only access to it. The Court referred to the fact that such an obstruction of a public road is a public nuisance which generally gives no right of action to an individual. But he may cause it to be abated if it produces

special injury to him different from the common injury to the public. The complainants were held to show such an injunctive suit. But there the requisites of a public user were clear and uncontraterest as to be sufficient to support the indicted.

As shown above, this property was deeded to trustees for the "use and benefit of the M. E. Church South Alabama". This would probably justify its use as a burying ground for members of the church, and friends when authorized by the church, but it would probably not justify its use as a public burying ground. We will suppose that the trustees intended to devote the use of the property to the purposes named in the trust deed. It is doubtful if they had authority to dedicate it to a different use.

The evidence is clear and uncontradicted that there never has been a user by the general public of the cemetery or parking lot. The use of it has presumptively always been in recognition of the superior right of the church in that connection. There is no evidence of its use otherwise than by those having a deed to a lot, or having some other permission from the church authorities to use a certain lot. Lot owners who purchased a lot from the church should have personal access to their property. Scruggs v. Beason, supra; Hamby v. Stapleton, 221 Ala. 536, 130 So. 76. But that is not claimed in the bill of complaint nor granted in the decree. Moreover, the evidence shows an ample right of access by other ways open to them. There is a street or alley along the east side of the cemetery and a lot suitable for parking and entrance on the south side.

■■ The result is that we are not in agreement with the trial court that tract "B", as described in the complaint, was dedicated to the public for use as a feature of the cemetery, which itself has not been dedicated to the public. On the other hand, declaration will here be made that said tract "B" has not been dedicated to the public. Nor can we agree that the deed from the church authorities to H. H. Garland, appellant, should be cancelled, set aside and annulled and so marked on the

record; or that appellant Garland should be required to remove the fence erected by him between tracts "A" and "B".

The decree of the trial court, therefore, should be reversed and one here rendered as indicated above.

The foregoing opinion was prepared by FOSTER, Supernumerary Justice of this Court, while serving on it at the request of the Chief Justice under authority of Title 13, § 32, Code, and was adopted by the Court as its opinion.

Reversed and rendered.

LIVINGSTON, C. J., and SIMPSON, GOODWYN and SPANN, JJ., concur.