This is an appeal from a declaratory judgment entered in favor of the plaintiffs in which the trial court decreed that certain contested tracts of land "belong to the public." We affirm.
Three separate property-dispute class actions for declaratory judgments, which were consolidated for trial, form the basis for this appeal. The plaintiffs are the owners of lots in three subdivisions on the Fort Morgan Peninsula in Baldwin County. The defendants are the successors in interest to Gulf Beach Land and Development Company (Gulf Beach), the original developer of the three subdivisions.
The plaintiffs purchased lots in the Ponce de Leon Court, Bernard Court, and Buchanan Court subdivisions from Gulf Beach through Gulf Beach's sales agents. Gulf Beach developed the property and sold the lots according to the recorded plat of each subdivision. The plaintiffs began this litigation when they learned that the defendants claimed to own certain areas of the three subdivisions in fee, as the successors in interest to Gulf Beach, and planned to develop the disputed property areas and deny the plaintiffs the use thereof.
The Ponce de Leon Court property owners alleged that Gulf Beach sold the lots in that subdivision with reference to the recorded subdivision plat and that an agent of Gulf Beach represented to the plaintiffs that the lots identified on the plat as 9, 32, 50, 64, and 86 were "access lots" to the Gulf of Mexico for the benefit of Ponce de Leon property owners. The filing of the plat, the sale of the lots in reference to the plat, the representations of Gulf Beach's agent as to the nature of the five access lots, and the purchase of the lots in reliance *Page 810 
on all of these factors, claim the plaintiffs, constituted a dedication of the five lots to the use of the owners of lots within Ponce de Leon Court. These same plaintiffs also allege that they have continuously and adversely used these five lots for access to the Gulf of Mexico — either as Ponce de Leon Court property owners or as members of the general public.
The owners of lots within the Bernard Court and Buchanan Court subdivisions claimed that Gulf Beach sold lots to them with reference to the recorded subdivision plats and that Gulf Beach's agent informed these plaintiffs that the land between the front property lines of Bernard Court and Buchanan Court and the Gulf of Mexico was a "community beach." The plaintiffs have both paid taxes on this beach area, according to each lot owner's proportionate interest in the subdivision, and used the property as a community beach for as long as they have owned their lots.
The declaratory judgment action filed by the Ponce de Leon Court lot owners requested that the court find that the five access lots were dedicated to the use of the Ponce de Leon Court lot owners for access to the Gulf of Mexico or, in the alternative, that the lots were dedicated to public use either by the filing of the subdivision plat or by the open, notorious, visible, hostile, undisputed, adverse, and continuous use of the lots by the public for access to the beach for over 20 years.
The Bernard Court and Buchanan Court plaintiffs' complaints asked the court to declare that all of the property between the front property lines of the two subdivisions and the Gulf of Mexico is a community beach for the use and enjoyment of the Bernard Court and Buchanan Court lot owners. These complaints were later amended to add an alternative prayer for relief; that is, a declaration that if the land between the subdivisions and the Gulf is not a community beach, then it was dedicated to the public by the recording of the subdivision plats and the sale of lots with reference to those plats.
The defendants denied that the "access lots" and the "community beach" areas were dedicated either to the plaintiffs or to the public, and alleged the affirmative defenses of the Statute of Frauds and the doctrine of merger. The defendants also contend that the plaintiffs' claims are barred as to these defendants because the defendants are bona fide purchasers for value of the disputed property.
The cases were tried without a jury and the trial court entered an order in which it held that the contested property in both cases belonged to the public. The trial court denied the defendants' post-trial motions requesting that the court set out its findings of fact and conclusions of law in support of its order. These appeals followed.
A brief overview of the law of "dedication" in Alabama will be helpful in understanding the disposition of this appeal. "A 'dedication' is a donation or appropriation of property to the public use by the owner." City of Fairfield v.Jemison, 283 Ala. 462, 464, 218 So.2d 273, 275 (1969). The public is a necessary party to any dedication, there being "no such thing as a dedication to an individual."Garland v. Clark, 264 Ala. 402, 405, 88 So.2d 367,370 (1956). In Alabama a valid dedication may be accomplished by two methods. A "statutory dedication" is made by strictly following the steps set out in Code 1975, § 35-2-51(b). "Common law dedication," which may be either express or implied, is accomplished when there have been acts which evidence an unequivocal intent by the owner to dedicate the property to a public use and anacceptance by the members of the public of the property for that public use. Sam Raine Construction Co.v. Lakeview Estates, Inc., 407 So.2d 542, 544 (Ala. 1981) (and the authorities cited therein). See, also,Cottage Hill Land Corp. v. City of Mobile,443 So.2d 1201 (Ala. 1983).
The existence of the vital factor of the owner's intent must be ascertained by the owner's acts and not from any hidden purpose in the owner's mind. Town of Leeds v.Sharp, 218 Ala. 403, 118 So. 572 (1928). It is the conduct of the owner that determines his intent to dedicate property *Page 811 
to a public use. Town of Leeds, supra. See, also, 26 C.J.S. Dedication § 11, p. 418 (1956).
Acceptance of a dedication, the second element necessary to a common law dedication of land, "may be shown by long public use, or by acts, either formal or otherwise, of corporate or other public officers adopting the property for the public's use." Cottage Hill Land Corp., supra, at 1203. It is a settled rule that a dedication has not been made until there has been an acceptance of the "offer" to dedicate. Smith v. City of Dothan, 211 Ala. 338,100 So. 501 (1924). Indeed, even though a defective attempted statutory dedication may operate as a common law dedication, the essential elements of intent and acceptance must still be present to establish a valid common law dedication. 26 C.J.S.Dedication § 4, p. 403 (1956).
It is also true that "formal acts" are not necessary to establish the acceptance of an offered dedication. Effective acceptance may be shown by "general user," not for any particular length of time, but long enough from which the factfinder may infer that the public is acting on a "theory of public right" which is the result of the owner'sacts of dedication. Trammell v. Bradford,198 Ala. 513, 516, 73 So. 894, 896 (1917).
 "It is well established that common law dedication may be either expressed or implied. An implied dedication arises when the acts or conduct of the owner are deemed to intend a dedication to the public use, such an implication being founded on the doctrine of estoppel in pais rather than by estoppel in grant. 26 C.J.S. Dedication § 15, p. 427 (1956). Once the public accepts the dedication by its use of the land, the owner will be estopped to deny the dedication without a clear showing that his acts were erroneously construed as intending to dedicate.
". . .
 "The doctrine of estoppel as it applies to dedication of lands was conceived out of the necessity for precluding the owner from resuming any use of the dedicated land inconsistent with established public use. The basis of the doctrine lies in the precept that 'to reclaim the land would be a violation of good faith to the public and to those who have acquired private property with a view to the enjoyment of the use contemplated by the dedication.' 23 Am.Jur.2d Dedication § 56, p. 50 (1965)." Sam Raine Const. Co., supra, at 544-45.
On appeal, the defendants claim that they own the disputed property in fee and that there was no dedication of the property to the public. We agree that there is nothing in the record to indicate any attempt at a statutory dedication of the five 50-foot lots in Ponce de Leon Court or of the beach areas adjoining Bernard Court and Buchanan Court. Indeed, all the parties agree that the recorded plats are ambiguous as to the dedication question posed by these lawsuits. We find, however, from a careful review of the record, that there was sufficient evidence of a common law dedication to sustain the trial court's order.
The plaintiffs purchased their lots in Ponce de Leon Court, Bernard Court, and Buchanan Court according to recorded plats of the subdivisions. The plaintiffs' deeds contain no language giving them any right to or interest in the two areas of contested property. The plaintiffs living in the Bernard Court and Buchanan Court subdivisions have paid taxes on the beach area since 1972; the defendants (and the defendants' predecessors), however, have paid the taxes on the Ponce de Leon Court "access lots."
W.P. Pickett was the real estate broker who sold most of the lots in Ponce de Leon Court and who was Gulf Beach's exclusive sales agent for the Buchanan Court and Bernard Court lots. He stated that he represented to the Ponce de Leon purchasers that the disputed lots were for the owners of lots in the subdivision for access to the beach. He also stated that the reason for numbering the lots, rather than designating them as roads, was to preclude the public from having access to the beach.
Gerald Sweet also sold some of the lots in the Ponce de Leon Court subdivision. *Page 812 
He testified that Pickett told him that the 50-foot lots were access lots and that Sweet then passed this information on to prospective purchasers.
Henry Holland, who worked for Gulf Beach from 1959 to 1974, produced a business record copy of the Ponce de Leon plat on which the words "public beach" were written on lots 9 and 32. He also stated that he had heard many discussions between the president of Gulf Beach and Pickett regarding their intent not to sell the "access lots" in Ponce de Leon Court. Holland also produced a letter which he had written in response to a lot owner's query and in which he had stated that lots 32 and 50 were "reserved for the use of the property owners in that area for access to the Gulf."
A deed from Gulf Beach to Boykin Investments was admitted into evidence which described land that included a portion of Ponce de Leon Court. The description of the land in the subdivision did not include the 50-foot "access lots." Also, a deed from Boykin Investments to Marilyn Stanard was admitted into evidence, which deed also failed to include lots 9, 32, 50, 64, and 86 of Ponce de Leon Court.
Riley Boykin Smith, an officer of Gulf Beach, testified that his family owned all the stock in Gulf Beach except that owned by the corporation's president. Smith stated that he had represented to the lot owners in Ponce de Leon Court that the 50-foot lots were for public access. He also testified that "the intent of the officers and owners of Gulf Beach was that the access would be there because without that access to the beach, the lots to the rear of the development that fronted the Gulf . . . wouldn't have much value without any access to the beach." Smith stated that he knew the access lots were open to the public and that the public used the lots and that the lots were intended to be open to public use.
Testimony from the owners of lots in Ponce de Leon Court and from persons who used the access lots but did not live in the subdivision revealed that the sand dunes on the access lots had been bulldozed for easier access to the beach and that there were clearly defined paths on the lots. Several of the lot owners testified that Pickett gave them copies of the plat with circles around the 50-foot lots and with writing stating that the lots were "access lots" or "easements."
Surveyor Claude Arnold examined the plat of Ponce de Leon Court and stated that the plat indicated a "qualified dedication" of the 50-foot lots. In other words, the lots were not reserved by Gulf Beach because they were not "boxed in" on the plat. However, Arnold stated that he did not think a public dedication was intended; rather, he felt that the lots were intended as rights-of-way for the benefit of the lot owners in the subdivision.
Another surveyor, called as a witness by the plaintiffs, testified that when the Fort Morgan Peninsula was originally subdivided and platted (including the area that is now Bernard Court and Buchanan Court), the words "Sand Beach" were written on the original plat over an area which includes the currently disputed land. This, stated the surveyor, indicated the intention of the owner to dedicate a portion of the land between the southern lot lines of the subdivisions and the Gulf. This entire area was later re-subdivided to allow for widening of the highway, but the revised plat of Buchanan Court designates the disputed area as "community beach."
With regard to the disputed beach area of the Bernard Court and Buchanan Court subdivisions, Pickett, the exclusive sales agent of Gulf Beach for these lots, testified that he informed prospective purchasers that the land lying between the subdivisions and the Gulf of Mexico were private beaches for the benefit of the lot owners. He also stated that he had mailed out "thousands" of letters referring to the common use of the beach area. Riley Smith testified that he told Bernard Court and Buchanan Court purchasers that they would receive access to the beach. Smith also stated that Gulf Beach made no claim to the disputed property when the corporation was dissolved in 1974, and that the *Page 813 
beach was open to the general public for recreational use.
Bernard Court and Buchanan Court lot owners testified that, in addition to the lot owners' using the beach from the time they purchased their lots, the general public had used the beach area for recreational purposes for a number of years. It is undisputed that the owners of lots in all three subdivisions have continuously used the "access lots" and the "community beach" as such since the time of the purchase of each lot (some as early as 1954), and all continuing to the present.
There can be no doubt from the foregoing that Gulf Beach, to and through its sales agents, represented each portion of the disputed property to be either an "access lot" or a "community beach" area, depending upon the lot being considered for sale. It is from this conduct of Gulf Beach, through its officers and agents, including the spoken and written representations during the sales negotiations for each lot, that we are able to ascertain the requisiteintent to dedicate. See Town of Leeds v. Sharp,supra. Equally persuasive is the conduct of the lot owners, as representative members of the public, and, too, the conduct of the general public, in accepting
these areas as lands dedicated to the public through their continuous and open use thereof. See Garland v. Clark,supra; Sam Raine Const. Co., supra.
We find, therefore, that the trial court could properly find there was both a valid intent to dedicate the "access lots" of Ponce de Leon Court and the "community beach" of Bernard Court and Buchanan Court on the part of Gulf Beach and an equally valid acceptance of the dedication by the subdivision lot owners and the general public. On the other hand, no evidence was presented to prove that the acceptance was an erroneous interpretation of the acts of the owner. To deny the plaintiffs and the public the use of the land at this time would be a "violation of good faith to the public and to those who have acquired private property with a view to the enjoyment of the use contemplated by [Gulf Beach's] dedication." Sam Raine Const. Co., supra, at 545, quoting 23 Am.Jur.2d Dedication § 56, p. 50 (1965).
Our holding that a valid common law dedication did in fact occur also disposes of other defenses raised by the defendants on appeal. The defendants claim that as bona fide purchasers for value of the interests of Gulf Beach, they are not chargeable with knowledge of the alleged dedication of the disputed property because of the ambiguities present in the recorded plats. This argument must fail for several reasons. First, although the designations of the "access lots" and the "community beach" areas on the recorded plats are not clear, the unusual size, shape, and placement of the "access lots," and the obvious necessity for the "community beach" areas, were sufficient to put Ritchey (a lawyer) on notice of the dedication of the property. Ritchey obtained two of the five access lots by quitclaim deed and, therefore, can not be a bona fide purchaser for value as to those lots.Crump v. Knight, 256 Ala. 601, 56 So.2d 625 (1952). His deed to the other three lots shows one of those lots as being encumbered by an easement. Even more telling is the chain of title of the disputed property down to Ritchey. The deed from Gulf Beach to Boykin conveyed "all real property owned by Gulf Beach Land Company" and went on to describe the specific lots involved. The five "access lots" werenot described.
We have already found that the continuous conduct of the lot owners and the public was sufficient to constitute an acceptance of Gulf Beach's intent to dedicate. This same conduct is sufficient to provide notice of the rights of the lot owners and the public to prospective purchasers, thereby defeating any defense of bona fide purchaser for value. SeeTouchstone v. Peterson, 443 So.2d 1219 (Ala. 1983);First National Bank of Birmingham v. Culberson,342 So.2d 347 (Ala. 1977); Cumberland Capital Corp. v.Robinette, 57 Ala. App. 697, 331 So.2d 709 (1976).
The defendants' defenses of Statute of Frauds and the doctrine of merger are not applicable. Because the recorded plats, *Page 814 
by the admissions of all parties, were ambiguous and uncertain in the treatment of the disputed property, parol evidence was admissible and the issue of whether or not a dedication had occurred was for the trier of fact — here, the trial court. Johnson v. Morris,362 So.2d 209 (Ala. 1978). See, also, I.H.M., Inc. v. Central Bankof Montgomery, 340 So.2d 30 (Ala. 1976).
In the absence of specific findings of fact, we must assume that the trial court "found those facts necessary to support its judgment unless these findings would be clearly erroneous and against the great weight of the evidence." Popwell v.Greene, 465 So.2d 384, 387 (Ala. 1985). Although the trial court did not set out the facts and legal premises upon which it based its order, in light of the facts and prevailing law in Alabama discussed herein, we find that the evidence sustains an interpretation of the trial court's order to the conclusion that there was a valid dedication of the contested property. The judgment of the trial court, therefore, is affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, SHORES, BEATTY, ADAMS, HOUSTON and STEAGALL, JJ., concur.